# KELLEAM ET AL. v. MARYLAND CASUALTY CO. OF BALTIMORE, MD., ET AL.

No. 349.  Argued February 5, 1941.—Decided February 17, 1941.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

This controversy has its origin in a probate proceeding in an Oklahoma court. Petitioner, E. A. Kelleam, was administrator in that proceeding. Respondent, Maryland Casualty Company, was surety on his bond. The probate court held that all of decedent's property was a maternal ancestral estate to which the full-blood heirs, E. A. Kelleam and Nell Southard, were entitled to the exclusion of the half-blood heirs, the individual respondents here. Such distribution was ordered and the administrator and Maryland Casualty Company were discharged from further liability. No appeal was taken; but shortly thereafter the half-blood heirs brought an action in the Oklahoma court to set aside that decree, alleging that petitioners E. A. Kelleam and Nell Southard had perpetrated a fraud upon the probate court and that the half-bloods were entitled to participation, the estate being a general not an ancestral estate. A demurrer to the complaint was sustained and an appeal was taken to the Oklahoma District Court where it is now pending. After that suit had been commenced [1] respondent-surety, learning that E. A. Kelleam and Nell Southard had transferred some of the property received from the estate,[2]

---

[1] Respondent-surety apparently was served with notice of that suit and appeared therein for the purpose of quashing the notice.

[2] According to the findings below, transfers were made to petitioners Joe E. Kelleam and Joe R. Southard, Jr.

brought this suit in the United States District Court, joining the full-bloods and the half-bloods as defendants and invoking federal jurisdiction on the basis of diversity of citizenship. In this suit in equity [3] respondent-surety sought exoneration on its bond, alleged that its remedy at law was inadequate, and prayed that a receiver be appointed to preserve the decedent's property pending the outcome of the dispute between the heirs, and that the parties be required to set up whatever claims they might have to the property. By their answer and cross-petition, the half-bloods renewed their claims of fraud in the probate decree and joined in the prayer for the appointment of a receiver. The answers of petitioners alleged, *inter alia,* lack of jurisdiction in the federal court by reason of the action in the state court; and they moved to strike the cross-petition for lack of jurisdiction. By an amendment to its bill respondent-surety added allegations charging fraud in the probate decree. The District Court found that petitioners E. A. Kelleam and Nell Southard, knowing of the existence of the other heirs, fraudulently concealed those facts from the probate court, gave no notice to the other heirs as required by law, and represented that E. A. Kelleam was a resident of Oklahoma when he was not; that the administrator failed to appoint a service agent as required by Oklahoma statutes; that the estate was fraudulently represented as an ancestral estate and that petitioners E. A. Kelleam and Nell Southard in furtherance of the plan to defraud the half-bloods consummated a settlement with some of them in exchange for their agreement not to contest the probate decree; that that decree, having been obtained by fraud, was void as to the half-bloods; that the intermediate conveyances by petitioners E. A. Kelleam and Nell Southard were fraudulent; that the remaining assets of

---

[3] This was not a bill of interpleader under 49 Stat. 1096, 28 U. S. C. § 41 (26) nor a suit under the Federal Declaratory Judgment Act, 48 Stat. 955, 49 Stat. 1027; 28 U. S. C. § 400.

the estate were in danger of being dissipated; that respondent-surety would become liable to the half-bloods for failure of the administrator to perform his duties; and that the property should be preserved pending a final order of accounting. Accordingly, it appointed a receiver, decreed that respondent-surety was entitled to exoneration by having designated property applied to the satisfaction of the interests of the half-bloods, decreed that the half-bloods were owners of designated undivided interests in the estate, established a lien thereon, and ordered petitioners E. A. Kelleam and Nell Southard to account. The Circuit Court of Appeals affirmed. 112 F. 2d 940. We granted certiorari because of the challenged propriety of the action of the District Court in appointing a receiver and in adjudicating matters at issue in the state court.

We think the bill should have been dismissed.

The essential purpose of the bill was to secure the appointment of a receiver so as to conserve the property and to impress it with a lien for the surety's protection. The surety had no stake in the outcome of the dispute among the heirs beyond its contingent right to exoneration. In this posture of the case it is manifest that respondent-surety sought the receivership not as a means to an end but as an end in itself. The receivership was ancillary only in the sense that it was protective of the surety whatever the future outcome of the controversy between the heirs. The surety was not presently liable on its bond; its liability and its right to exoneration were wholly contingent, being dependent on a successful attack on the probate decree by the half-bloods. That attack was currently being made in the state court.

Accordingly, a receiver should not have been appointed. The error in the appointment was not a question of authority but of propriety. *Pennsylvania* v. *Williams*, 294 U. S. 176; *Gordon* v. *Washington*, 295 U. S. 30. As this

Court stated in the *Gordon* case (p. 37): "A receivership is only a means to reach some legitimate end sought through the exercise of the power of a court of equity. It is not an end in itself." Receiverships for conservation of property "are to be watched with jealous eyes lest their function be perverted." *Michigan* v. *Michigan Trust Co.*, 286 U. S. 334, 345. This Court has frequently admonished that a federal court of equity should not appoint a receiver where the appointment is not a remedy auxiliary to some primary relief which is sought and which equity may appropriately grant. *Booth* v. *Clark,* 17 How. 322, 331; *Pusey & Jones Co.* v.. *Hanssen,* 261 U. S. 491; *Gordon* v. *Washington, supra.* And the reasons for such restraint are reinforced where the rights to the property sought to be conserved by a receivership are being litigated in a state court. Cf. *Penn General Casualty Co.* v. *Pennsylvania,* 294 U. S. 189; *Pennsylvania* v. *Williams, supra.* There was here no accrued right of the surety as respects the enforcement of which the receivership was an ancillary remedy, its right to exoneration being wholly contingent.[4] The existence of any right to exoneration was dependent on the outcome of the action which was pending in the Oklahoma court. In view of those circumstances, equity practice does not sanction the use of a conservation receivership to protect such a claim. Furthermore, from all that appears, the surety could be adequately protected in the cause pending in the Oklahoma court by provisional remedies or otherwise.

Respondent-surety contends that under Oklahoma statutes a surety may obtain indemnity against his prin-

---

[4] Cf. *Glades County* v. *Detroit Fidelity & Surety Co.,* 57 F. 2d 449, 452; *Morley Construction Co.* v. *Maryland Casualty Co.,* 90 F. 2d 976; *Southwestern Surety Ins. Co.* v. *Wells,* 217 F. 294; *Central Surety & Ins. Corp.* v. *Bagley,* 44 F. 2d 808; Arant, Suretyship (1931) pp. 318–321.

cipal even before the debt is due and receive the protection of various provisional remedies. Even so, a "remedial right to proceed in a federal court sitting in equity cannot be enlarged by a state statute." *Pusey & Jones Co.* v. *Hanssen, supra,* p. 497.

For these reasons, the appointment of the receiver was an abuse of discretion.

Since respondent-surety had no present claim to relief on its own behalf in the federal court, that court had no jurisdiction to adjudicate the dispute between the full-bloods and the half-bloods. Even if, on this record, the presence of respondent-surety would support a claim to diversity of citizenship, that diversity was lacking as between the other parties. Hence once the bill of complaint were dismissed, no jurisdiction would remain for any grant of relief under the cross-petition. See *Kromer* v. *Everett Imp. Co.,* 110 F. 22. And even if the bill be construed as drawing in issue the merits of the controversy between the heirs which the federal court had jurisdiction to adjudicate within the rule of *Arrowsmith* v. *Gleason,* 129 U. S. 86, and *Sutton* v. *English,* 246 U. S. 199, 205, that court could not with propriety proceed. A case involving that very controversy was pending in the Oklahoma court. That case did not involve simply an *in personam* action. Cf. *Kline* v. *Burke Construction Co.,* 260 U. S. 226. It involved an adjudication of rights to specific property distributed pursuant to a probate decree. Cf. *Penn General Casualty Co.* v. *Pennsylvania, supra,* at p. 195. The federal court therefore should not have asserted its authority. In such a case it is "in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy." *Pennsylvania* v. *Williams, supra,* p. 185.

*Reversed.*