**SOUTH SIDE THEATRES, Inc., et al. v.
UNITED WEST COAST THEATRES
CORPORATION et al.**

No. 12165.

United States Court of Appeals
Ninth Circuit.

Dec. 22, 1949.

Rehearing Denied Feb. 1, 1950.

Macfarlane, Schaefer & Haun, Henry Schaefer, Jr., William P. Gamble, James H. Arthur, Los Angeles, Cal. (Russell Hardy, Los Angeles, Cal., of counsel), for appellants.

Gurney E. Newling, Clyde E. Holley, George W. Tackabury, Frank R. Johnston, Newling, Holley, Sandmeyer & Tackabury, Los Angeles, Cal., for appellees.

Before BONE, Circuit Judge, and LING and DRIVER, District Judges.

DRIVER, District Judge.

■ Defendants'. appeal from an order approving a receiver's final account raises the single issue whether the district court had jurisdiction of the action in which the receiver was appointed. In their complaint the plaintiffs, United West Coast Theatres Corporation and Fox West Coast Agency Corporation, asked for declaratory relief under Section 2201 of Title 28 U.S.C.A., and for the appointment of a receiver to operate defendants' theatre property involved in the controversy. The receiver was appointed, operated the property for approximately seventeen months and filed his final account. In the meantime the defendants moved to dismiss the complaint, one ground being that the court lacked jurisdiction, but so far as the record on this appeal shows, the trial court did not rule on the motion and no other steps were taken to advance the main action. Defendants (appellants) contend that the complaint does not state facts sufficient to give a federal court jurisdiction and that the receivership proceedings, therefore, are void from beginning to end. If the contention is sound, it follows that the costs and expenses of the receivership and the fees of the receiver and his attorney should not be paid from receivership funds.[1]

■ Diversity of citizenship is not claimed and the question for determination is whether the action is one arising under the laws of the United States.[2] An action so arises where an appropriate statement by the plaintiff, unaided by an anticipation or avoidance of defenses, shows that it actually and substantially involves a controversy respecting the validity, construction, or effect of an act of Congress upon the determination of which the result depends.[3] The statement of the facts upon which the existence of federal jurisdiction depends must affirmatively and distinctly appear in the plaintiff's complaint.[4] In order to determine whether the district court had jurisdiction in the present case, then, we must look to the allegations of the complaint.

The first paragraph consists of the usual recitals, by way of legal conclusions, of the basis of jurisdiction. The paragraph reads as follows: "The matter in controversy exceeds, exclusive of interest and costs, the sum or value of three thousand dollars ($3,000.00) and arises under the laws of the United States, to wit: Section 1[4] of the Act of Congress of July 2, 1890, 15 U.S.C.A. § 4, entitled 'An act to protect trade and commerce against unlawful restraints and monopolies,' commonly known as the Sherman Act."

The factual allegations of the complaint which follow paragraph one may be summarized as follows:

On April 1, 1941, plaintiff United West Coast Theatres Corporation, the lessee of the Fifth Avenue Theatre in Inglewood California, plaintiff Fox West Coast Agency Corporation and defendant South Side Theatres, Inc., the owner of the Alto Theatre in Los Angeles, entered into a written agreement for the joint operation of the theatres and the buildings in which they were situated for the term of ten years. The agreement provided that plaintiff

1. Finneran v. Burton, 8 Cir., 291 F. 37; Fryer v. Weakley, 8 Cir., 261 F. 509; Noxon Chemical Products Co. v. Leckie, 3 Cir., 39 F.2d 318, 321. See also Gordon v. Washington, 295 U.S. 30, 37, 55 S. Ct. 584, 79 L.Ed. 1282; Kelleam v. Maryland Casualty Co., 312 U.S. 377, 61 S. Ct. 595, 85 L.Ed. 899.

2. See 28 U.S.C.A. §§ 1331 and 1337.

3. Shulthis v. MacDougal, 225 U.S. 561, 569, 32 S.Ct. 704, 56 L.Ed. 1205; Hopkins v. Walker, 244 U.S. 486, 489, 37 S. Ct. 711, 61 L.Ed. 1270; First Nat. Bank of Canton, Pa., v. Williams, 252 U.S. 504, 512, 40 S.Ct. 372, 64 L.Ed. 690; Barnhart v. Western Maryland Ry. Co., 4 Cir., 128 F.2d 709, 713.

4. Norton v. Larney, 266 U.S. 511, 515, 45 S.Ct. 145, 69 L.Ed. 413; Smith v. McCullough, 270 U.S. 456, 459, 46 S.Ct. 338, 70 L.Ed. 682.

650

United West Coast Theatres Corporation and defendant South Side Theatres, Inc. were to share the profits and losses of the joint venture, in the proportion of 51 per cent to the former and 49 per cent to the latter. Plaintiff Fox West Coast Agency Corporation was to supervise the business of the venture and as compensation therefor was to receive 5¼ per cent of the gross weekly receipts.

On the date of the making of the joint venture agreement, the parties thereto entered into a written contract which provided for the termination of the venture at the election of any party thereto upon the happening of certain events. Among the specified events was the entry of a decree in an action brought by the United States against any party to the joint venture agreement requiring such party to terminate or nullify the agreement or the effect of which would be to subject any party thereto to penalty or damage on account thereof or anything done thereunder.

On March 1, 1944 defendant South Side Theatres, Inc. transferred all of its interest in the joint venture (reserving ownership of its theatre building) to the other defendants, South Side Associates.

On June 11, 1946, a Special Expediting Court, sitting as the United States District Court for the Southern District of New York, in the case of United States v. Paramount Pictures, Inc. et al., 66 F.Supp. 323, 351, filed an opinion in which the court expressed the view that certain agreements between owners of two or more theatres normally in competition were illegal and that "even if the parties to such combinations were not major film producers and distributors, but were all wholly independent exhibitors, such agreements might often be regarded as beyond the reasonable limits of restraint allowance under the Sherman Act [15 U.S.C.A. § 1 et seq]." On December 31, 1946 the Expediting Court filed its findings of fact, D.C., 70 F.Supp. 53, 67, one of which was as follows: "Other forms of operating agreements are between major defendants and independent exhibitors rather than between major defendants. The effect is to ally two or more

theatres of different ownership into a coalition for the nullification of competition between them and for their more effective competition against theatres not members of the 'pool'." On the same date the court entered a decree enjoining and restraining certain of the defendants in the New York action, including Twentieth Century-Fox Film Corporation and National Theatres Corporation "from making or continuing to perform pooling agreements whereby given theatres of two or more exhibitors normally in competition are operated as a unit or whereby the business policies of each are collectively determined by a joint committee or by one of the exhibitors, or whereby profits of the 'pooled' theatres are divided among the owners according to prearranged percentages." The foregoing provisions of the decree became effective July 1, 1947.

The plaintiffs (in the instant case) are subsidiaries of Twentieth Century-Fox Film Corporation and National Theatres Corporation and are informed and believe that the joint venture agreement is one the performance of which is enjoined and restrained by the decree above mentioned. Plaintiffs fear that if they continue to operate the Alto Theatre under the joint venture they will violate the terms of the decree, be in contempt of the court making the same and be subjected to penalties therefor.

The venture agreement is a written contract in which plaintiffs are interested and with reference to which they desire a declaration with respect to the rights and liabilities of plaintiffs and defendants.

On June 10, 1947 plaintiffs served upon defendants a notice of intention to terminate the joint venture agreement by reason of the happening of certain events specified in the termination agreement and because of the provisions of the decree in the case of United States v. Paramount Pictures, Inc. et al., and on June 30, 1947 plaintiffs served upon defendants a notice of termination of the agreement. An actual controversy between the parties exists, as plaintiffs contend that by reason of the provisions of the termination agreement and by reason of the terms of the New

York decree plaintiffs are no longer legally permitted to perform the venture agreement and the performance thereof has been rendered impossible and terminated by operation of law, whereas the defendants contend that regardless of the decree the plaintiffs are still bound by the joint venture agreement and required to perform the same in accordance with its terms.

On June 30, 1947 plaintiffs tendered the Alto Theatre to the defendants and requested them to operate the same, but defendants refused to accept or comply. The theatre, a profitable enterprise, was closed and would "remain dark" after June 30, 1947, resulting in irreparable damage unless a receiver was appointed to operate it.

In the prayer of their complaint, following the foregoing factual allegations, the plaintiffs asked that the joint venture agreement be declared terminated and of no further force or effect, and that plaintiffs be relieved from liability to perform the same; that the court declare such other rights or duties as might be necessary or proper with relation to the agreement between the parties; and that a receiver be appointed to take charge of and operate the Alto Theatre and the Alto Theatre Building.

While it appears from the foregoing summary that the plaintiffs stressed their right to terminate the joint venture agreement pursuant to the provisions of the termination agreement and the proceedings in the anti-trust suit brought by the government in the New York District Court, we think the complaint nevertheless sets forth sufficient facts to raise the issue that the joint venture agreement violated the Sherman Act. It is alleged that plaintiffs and defendants, competitors in the theatre business, entered into a contract for the joint operation of their rival theatres under an arrangement whereby the profits were to be shared but both properties were to be under the direction and control of the plaintiffs, and that other similar pooling arrangements had been held to constitute violations of the Sherman Act. Although not well pleaded, and lacking the emphasis given by the pleader to the termination agreement and the findings and decree of the New York District Court, such factual allegations, we think, sufficiently show a substantial controversy with reference to the validity of the joint venture agreement under the Sherman Act, in the posture of the instant case.[5] An action in which the court is asked to declare a contract illegal under the Sherman Act and that the defendants are engaged in unlawful restraint of trade presents a federal question sufficient to give a district court jurisdiction. Rambusch Decorating Co. v. Brotherhood, etc. of America, 2 Cir., 105 F.2d 134, 136; certiorari denied 308 U.S. 587, 60 S.Ct. 110, 84 L.Ed. 492. Cf. Duplex Printing Press Co. v. Deering, 254 U.S. 443, 41 S.Ct. 172, 65 L.Ed. 349, 16 A.L.R. 196. See also General Investment Co. v. New York Central Railroad Co., 271 U.S. 228, 46 S.Ct. 496, 70 L.Ed. 920. It is immaterial that the plaintiffs stated in the complaint another and different ground for declaratory relief which, we will assume, did not present a federal question, namely, that the joint venture contract was cancelled pursuant to the provisions of the

---

5. Plaintiffs' attorneys so interpreted the complaint in the argument before the trial court on September 12, 1947, on defendants' motion, to dismiss. One of plaintiffs' attorneys then stated: "Our contention in this court, your Honor, and I hope I can make it clear, is that we are asking you to find that this joint venture agreement under the Sherman Act is illegal. We cite the case (United States v. Paramount Pictures, Inc. [D.C., 66 F. Supp. 323; Id., D.C., 70 F.Supp. 53]) in our complaint because it is perfectly proper, the Paramount decree, as authority for holding that this joint venture agreement in this lawsuit is illegal." Although the trial court in colloquy with counsel expressed the opinion that jurisdiction was lacking, the record shows no disposition of the motion to dismiss. Evidently it was denied or waived, however, as the defendants in a second amended answer set up a counterclaim against plaintiffs and third party defendants for treble damages for violation of the Sherman Act. See the district court's opinion reported in 86 F.Supp. 109. The court there held that the defendants' counterclaim was not barred by limitation.

termination agreement. Where two separate and distinct grounds are alleged in support of a cause of action or claim, only one of which raises a federal question, the federal court has jurisdiction if the federal question presented is substantial, and even though the federal ground is not established by the evidence the court may retain jurisdiction and dispose of the case on the non-federal ground.[6] If we disregard, as we may for our present purpose, all of the allegations pertaining to the termination agreement and the acts of the plaintiffs thereunder, we think that there remains in the complaint a sufficient factual basis to support a controversy as to whether the joint venture agreement contravened the restrictions of the Sherman Act.

The order of the district court is affirmed.

6. Siler v. Louisville & Nashville R. Co., 213 U.S. 175, 191, 29 S.Ct. 451, 53 L.Ed. 753; Lincoln Gas & Electric Light Co. v. City of Lincoln, 250 U.S. 256, 39 S.Ct. 454, 63 L.Ed. 968; Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148; Southern Pac. Co. v. Van Hoosear, 9 Cir., 72 F.2d 903, 911.