54 So.2d 161 (1951)
CLAWSON
v.
CLAWSON.
Supreme Court of Florida, en Banc.
August 7, 1951.
Rehearing Denied October 5, 1951.
Clifton M. Kelly, Lakeland, for appellant.
William K. Love, Marvin B. Woods and D.C. Laird, all of Lakeland, for appellee.
THOMAS, Justice.
This litigation began with a bill of complaint filed by the appellee against her husband, the appellant, containing prayers for division of their property, for support and maintenance, and for costs and attorney's fees. It ended with a decree declaring that the designated property could not be enjoyed by the parties "in unity"; that one-half of it should go immediately to the wife, and one-half of the income from the remainder should be paid to her until they agreed to a division; "and," added the chancellor, "an equal division in the event of divorce."
Then the chancellor found that the appellant was not a good manager and that the appellee's interest could only be protected by placing the property in receivership so long as the parties continued "technically to be husband and wife or until they mutually agree[d] on a division * * *."
The chancellor thereupon put a receiver in charge and restrained the parties from having any control or management of it, and from interfering with the receiver's custody. He ordered the receiver to divide the proceeds and the income.
Thus the suit culminated in a division of the property of a man and his wife and the creation of an indefinite, or permanent, *162 or perpetual, receivership to come to an end only when they are divorced or agree upon a division  and there is no apparent prospect of either.
Evidently the appellee relied upon Section 65.10, Florida Statutes 1949, F.S.A., for the basic relief she sought. In that statute it is provided that if a husband able, partly or wholly, to support his wife fails in his duty, she may "obtain such maintenance * * * upon bill filed and suit prosecuted as in other chancery causes;" and the appropriate order is one "to secure to her such maintenance * * *." Although this relief is what appellee primarily sought, it was not forthcoming.
The real question here is the propriety of the receivership, and, allied with it, the correctness of the division of the property in a suit, an unsuccessful one, for separate maintenance. There is nothing unusual in the factual situation now presented. It is the familiar story of a man and wife starting their life together with little or nothing and gradually accumulating property through joint effort  not as in a business relationship, but by the contribution of each to every aspect of the marriage venture. Neither could probably trace in terms of currency an interest in the whole or parts of the estate.
Of course when the time comes for severance of the marriage ties it is logical, practical and just to divide the physical assets so that each spouse will have a fair share. When the marriage relationship is ended there is occasion to take inventory, so to speak, and wind up the interests of the parties in the property acquired through common effort. To advance this principle the law provides that holders of estates by the entireties, peculiar to married persons, shall become tenants in common upon divorce. Section 689.15, Florida Statutes, F.S.A. In such way all the unities present in joint tenancy and the unity of person, characteristic of such estates, are reduced to the lone unity of possession. Andrews v. Andrews, 155 Fla. 654, 21 So.2d 205.
But why should there be a designation or an adjudication of the respective interests in property a man and woman have accumulated by their combined efforts as mates while the relationship exists? In this particular case the wife wasn't even favored with a decree that her husband maintain her; the unity or singleness of person still obtains, and will, so well as can now be told, as long as they both shall live.
A married woman might enter into a business partnership with her husband, Section 708.09, Florida Statutes 1949, F.S.A., which could be dissolved irrespective of the marriage status. The interest of each springing from such an agreement is easily distinguishable from the interest in common property acquired as a result of their living together and their efforts to further the marriage venture. But this material aspect is only an incident of the marriage statute, a contract itself of such importance to the body politic that the state is never indifferent to its success or failure, and for that matter it may be entirely successful if no wealth in material things be gained by the parties.
In the absence of a regular business partnership agreement, this writer can see no point whatever to adjudicating the respective interests of a man and wife in the property that has come to them as a consequence of their living as one, both contributing in services of different kinds to the marriage enterprise. From a practical standpoint such an adjudication seems useless until the relationship itself is severed. It may well happen that these very parties will compose their differences and in such case they would resume normal relations as spouses while their property interests will have been settled as if they had been former business associates.
As for the receivership, we again find ourselves in disagreement with the chancellor. Aside from the singular practical effect of the receiver's having charge of the property of the one, the man and wife being so considered in the common law, it is not appropriate for other reasons. Receivership is not an end in itself, Kelleam v. Maryland Casualty Co., 312 U.S. 377, 61 S.Ct. 595, 85 L.Ed. 899, but a means to an end. It is remedial and serves to preserve the thing in controversy for the *163 benefit of the parties against the day when the court will adjudicate their interests. There is no anticipated decision in this controversy that would be effectuated by the court's preservation of the property. Indeed the case is over, and to repeat, the appellee wasn't even awarded separate maintenance, her principal, if not only, proper claim. The parties are still man and wife, the suit is ended, and a receiver has their property, and incidentally themselves in charge because he is to measure out to each of them a proportionate share of the income; after his own compensation is paid, that is. Thus, the ancillary remedy becomes the main relief, an importance entirely out of proportion to its purpose. We cannot for these reasons affirm. The decree is reversed with directions to discharge the receiver and dismiss the bill.
Reversed.
CHAPMAN, ADAMS and ROBERTS, JJ., concur.
SEBRING, C.J., TERRELL, J., and WEHLE, Associate Justice, dissent.
VICTOR O. WEHLE, Associate Justice (dissenting).
This case involves a suit for separate maintenance and declaration of property rights in which the Chancellor in his final decree established an indefinite receivership of the husband's property, from which decree the husband appealed.
The wife in her suit for separate maintenance described in detail the financial history of the parties and claimed that certain personal property and a valuable piece of real property in Polk County, including a tourist court, trailer camp, and stores, had been purchased with savings of both parties and that title thereto had been taken in the husband's name alone, contrary to the wishes of the wife. She asked for separate maintenance and an equitable division of the property.
The testimony was heard in part by a Special Master and, on the question of certain of the details of the nature and value of the property, by the Chancellor. The Master found that the wife was living separate and apart from her husband through her own fault and recommended that she be denied any separate maintenance. He also found that the wife was justly entitled to joint ownership with the husband in all of their properties and recommended that an equitable division thereof be ordered.
The Chancellor found that "the equities in this cause are with the plaintiff"; but entered a decree making no provision for her separate maintenance, although attempting to give some relief in regards to the property.
It is claimed by appellant husband that the decree is so ambiguous as to require reversal in that it failed to provide separate maintenance for the wife and yet found that "the equities in this cause are with the plaintiff". We do not agree with this contention. The Bill of Complaint was dual in nature, seeking both separate maintenance and a determination of property rights. The Chancellor's decree in its findings of fact, conclusions of law, and decretal portion is construed by us as finding that the plaintiff was entitled to a one-half interest in the property, title to which was in the defendant. To that extent alone he found "the equities in this cause are with the plaintiff."
Appellant also contends that the suit is primarily one for separate maintenance, and, the Master and the Court both having denied separate maintenance to the wife, the entire suit fails and no action could be taken by the Chancellor in connection with the property rights of the parties. Here, again, the appellant overlooks the dual nature of the Bill of Complaint. The wife had the right to seek an adjudication of property rights, either as an incident to her suit for separate maintenance or in an independent action. The fact that she combined the applications and failed in one does not deprive the Court of jurisdiction to determine the other.
In Hill v. Hill, 123 Fla. 571, 167 So. 414; this Court referred to "* * * the recognized right in this jurisdiction in a court of chancery to determine and adjudicate the property rights between husband *164 and wife either as an incident to a suit for divorce or in an independent suit."
In an effort to establish and protect the interests of the plaintiff in the property the Chancellor appointed a receiver to operate the property indefinitely and to divide the net proceeds between the parties. He did so because, as he stated, "our laws as to property rights of husband and wife are such that it is impossible to make a fair and permanent division of their property between them contemplating permanent separation without divorce, and any arrangements decreed by the Court for absolute division would be inadequate," and that "the wife's interest cannot properly be protected without placing said property in receivership with instructions to divide the net income between husband and wife as long as they continue technically to be husband and wife or until they mutually agree on a division of said property." Although we sympathize with the Chancellor in his conscientious effort to work out a practical solution of the property problem, we are unable to approve the creation of such a receivership. We find no authority to justify the same. There is apparently only one reported case in which something of this nature was attempted. In the Arizona case of Ackel v. Ackel, 57 Ariz. 14, 110 P.2d 238, 242, 133 A.L.R. 549, Id., 57 Ariz. 118, 111 P.2d 628, 133 A.L.R. 556 (in which a divorce was granted), the appellate court decided that the only practical way to dispose of the community property was temporarily to place the same in receivership for the purpose of adjusting the various community debts. The Arizona Court stated "So far as we know there are no precedents for the course which we have determined upon," but proceeded on the theory that the marriage relation in Arizona and particularly in regard to the community estate is analogous to a partnership and upon dissolution of a partnership the partnership property may be placed in receivership for the purpose of ultimately dividing the same. The doctrine of community property is not recognized in Florida and we do not regard this Arizona decision as controlling or applicable to Florida property.
To continue with the receivership decreed by the Chancellor without any provision for its termination would be to extend unduly the equitable powers of the Court. As was stated by this Court in Allen v. Hawley, 6 Fla. 142, 164, "it never could have been contemplated that a Court of Chancery, should become the superintendent of the private affairs of individuals,  its legitimate province is to adjust the rights, and settle the disagreements of parties, growing out of such transactions." We believe that the Chancellor could and should have satisfactorily adjusted the property rights of the parties in another manner.
The Master and the Chancellor both found that moneys of the wife had been used for the purchase of the properties now held in the husband's name. In the absence of satisfactory evidence to the contrary this would justify the Chancellor in finding a resulting trust in favor of the wife. See Foster v. Thornton, 131 Fla. 277, 179 So. 882 (2nd Headnote), where it is stated "where any portion of consideration belongs to wife and title is taken in husband's name alone, there is no presumption of an advancement, and a resulting trust arises in her favor by implication to extent that consideration furnished by her is used".
The Master and Chancellor having found that the wife was entitled to a one-half equitable interest in the property, the Chancellor would have been acting within the bounds of his discretion in decreeing that the parties were tenants in common, each of an undivided one-half interest.
Under the common law there is a conflict of authority as to whether partition suits lie between the parties to a marriage. Several highly respected Courts have ruled that partition does so lie in equity. See Fulper v. Fulper, 54 N.J. Eq. 431, 34 A. 1063, 32 L.R.A. 701; and Moore v. Moore, 47 N.Y. 467, 7 Am.Rep. 466.
In states such as Florida that have adopted a Married Woman's Act, Section 708.01-708.10, Florida Statutes 1949, F.S.A., there would seem to be no question that either spouse can sue the other for partition *165 in a proper case. We are of the opinion therefore that the Chancellor could have decreed the parties to be tenants in common, each of an undivided one-half interest, in all their properties now held in the husband's name alone and that either party could thereafter bring partition, or, if additional pleadings to that effect are filed herein, seek partition as part of the relief in the pending suit.
The decree appealed from should be reversed with directions to modify the final decree to conform to the views expressed in this Opinion.
SEBRING, C.J., and TERRELL, J., concur.