## PETTYJOHN et al. v. PETTYJOHN et al.

### No. 14317.

United States Court of Appeals
Eighth Circuit.

Aug. 30, 1951.

As Amended on Denial of Rehearing
Nov. 14, 1951.

Jerome Walsh, Kansas City, Mo. (David Skeer, Kansas City, Mo., on the brief), for appellants.

William E. Kemp, Kansas City, Mo. (Edmund H. McVey, Kansas City, Mo., on the brief), for appellee Bess Pettyjohn, administratrix, and individually.

Seth S. Lacy, Kansas City, Mo. (Omar E. Robinson, Kansas City, Mo., on the brief), for appellee Francis L. Pettyjohn.

Before GARDNER, Chief Judge, and RIDDICK and COLLET, Circuit Judges.

RIDDICK, Circuit Judge.

This is an appeal from a decree on the issues raised on cross-claims of defendants in actions brought by the United States under Title 26, Section 3678, United States Code, to enforce liens for taxes on real and personal property of defendants. A statement of the facts as shown by the undisputed evidence and by allegations in the pleadings either admitted or not denied will be helpful in understanding the question which we think decisive of the appeal.

H. L. Pettyjohn died intestate in Kansas City, Missouri, on May 26, 1946, survived by Bess Pettyjohn, his widow, by Harry A. Pettyjohn, a son by a former marriage, and by Francis L. Pettyjohn, a grandson, sole heirs and distributees of his estate. In June 1946 Bess Pettyjohn was appointed administratrix of his estate by the Probate Court of Jackson County, Missouri. In the course of the administration in the State probate court, the Collector of Internal Revenue presented claims of the United States against the estate for delinquent income taxes of H. L. Pettyjohn for the years 1941 to 1945, inclusive, and for the period January 1 to May 26, 1946, the date of H. L. Pettyjohn's death. The claims were allowed. The estate was without means to pay them. The administratrix filed in the probate court a proceeding under sections 63–67, Mo.R.S.A., R.S.1949, §§ 462.400 to 462.440, for the recovery of assets of the estate which she alleged were wrongfully withheld by Harry A. Pettyjohn. Harry A. Pettyjohn appeared in the probate court and was examined on the issues involved on November 23, 1948. This proceeding is still pending in the State probate court.

For many years before his death H. L. Pettyjohn engaged in business in Kansas City, Missouri, under the name of Centropolis Transfer Company. He became seriously ill in December 1942 and from that time until his death the management of the Transfer Company was largely in the hands of his son, Harry A. Pettyjohn. During this period the business of the Transfer Company prospered. H. L. Pettyjohn invested the profits of the Transfer Company in equipment and personal property used in the company's business, and in real estate. Title to the real estate purchased during this period was taken in the names of H. L. Pettyjohn and Harry A. Pettyjohn with the right of survivorship. H. L. Pettyjohn and Harry A. Pettyjohn also established a substantial bank account in their joint names with the right of survivorship. Afer the death of H. L. Pettyjohn, Harry A. Pettyjohn continued in the management of the Centropolis Transfer Company. During this period he invested profits of the business in real estate, in bonds and other securities, and in bank accounts, title to all of which was held either in his name or in his name and that of his wife, Helen Pettyjohn. And also during this period, Bess Pettyjohn, as administratrix of the estate of H. L. Pettyjohn, procured an order of the probate court authorizing the sale to Harry A. Pettyjohn of a one-third interest in the personal property of the Transfer Company. The sale was made and title delivered in accordance with the order of the probate court.

On February 15, 1949, the United States filed in the District Court for the Western District of Missouri two actions to enforce liens for delinquent income taxes. In No. 5575 the United States charged that H. L. Pettyjohn during the period beginning with the year 1941 and continuing to the

date of his death on May 26, 1946, and Harry A. Pettyjohn and his wife for the years 1941 to 1948, inclusive, individually and as transferees of H. L. Pettyjohn, had fraudulently concealed assets and filed false income tax returns resulting in the deficiencies alleged. In No. 5576 like charges were made against Harry A. and Helen Pettyjohn for the years 1941 to 1947, inclusive. In both actions Francis L. Pettyjohn and Bess Pettyjohn in her representative and individual capacities were joined as parties defendant. At the instance of the plaintiff in these cases a receiver was appointed for all the properties, real and personal, described in the complaints of the United States. According to the stipulation of the parties the receiver was still in possession on the submission of this appeal.

In each of the actions brought by the United States the defendants filed cross-claims against their co-defendants claiming title to the properties on which the United States sought liens for taxes. These cross-claims put in issue the mental competency of H. L. Pettyjohn during the period from December 1942 to May 1946, and undue influence exercised upon him by Harry A. Pettyjohn, as either affected title to real and personal property acquired during the period mentioned; the ownership of the Centropolis Transfer Company; title to all property real and personal, held by Harry A. or Harry A. and Helen Pettyjohn acquired with funds received from the operation of the Transfer Company; as well as an accounting between Harry A. and Helen Pettyjohn and the administratrix.

Since neither the complaints in the actions brought by the United States nor the order or orders appointing a receiver of the properties involved in the actions are included in the record, it is impossible to determine with certainty the identity of the properties, real and personal, described in the complaints and delivered to the receiver appointed by the District Court. All of the properties, however, were delivered to the receiver, and it seems reasonably certain from the whole record that each action involved the same properties,

and that the cross-claimants asserted the right of possession or ownership of the properties through H. L. Pettyjohn. In its order consolidating the cases for trial the court found that they were companion cases "involving the same parties and in large part identical facts, claims and issues of law." In the consolidated cause the court entered one decree disposing of the actions of the United States, and one decree settling the issues on the cross-claims. The District Court and the parties have treated the actions after consolidation for trial as in practical effect one action.

The actions of the United States were settled before trial by agreement of the parties. On September 28, 1950, the District Court entered its decree in favor of the United States based entirely upon the stipulation of the parties. Judgment in favor of the United States for delinquent taxes in the total sum of $100,000 was entered against Bess Pettyjohn, Harry A., Helen, and Francis L. Pettyjohn, payable out of the assets of the H. L. Pettyjohn estate, and separate judgments against Harry A. and Helen Pettyjohn for $4,323.-24 and against Francis L. Pettyjohn for $149.99 not payable out of the assets of the Pettyjohn estate. The decree established liens of the United States on 18 separate parcels of real estate and provided that all the real property described in the decree should be conveyed to Bess Pettyjohn as administratrix without prejudice to any claims of title asserted by any of the defendants. The complete decree is not included in the record, but we are advised by the parties that in conformity with it all of the real estate upon which liens were established in favor of the Government has been quitclaimed as directed to Bess Pettyjohn as administratrix, that the decree provided for the payment of delinquent taxes in installments over a period of 24 months, that all installments have been promptly paid when due, and that the United States is fully secured by the liens impressed upon the real estate conveyed to the administratrix.

This decree finally and completely determined the rights of the United States in its actions. After its entry the court pro-

ceeded with the trial of the issues raised on the cross-claims. All of the cross-claimants were citizens of Jackson County, Missouri, where all of the properties involved in the litigation are situated and where the administration of the estate of H. L. Pettyjohn is still in progress. The decree of the court settling the issues raised on the cross-claims is before us on this appeal. We are met at once by the question of the jurisdiction of the District Court over the controversies involved in the cross-claims which were, as we have noted, between citizens and residents of the State of Missouri.

■■ Obviously, the District Court had jurisdiction of the actions brought by the United States. Its decree determining the amount of taxes owed by defendants and subjecting the properties of defendants to liens for the payment of taxes is final against the defendants, and conclusive upon any court in which the controversies between the cross-claimants over title to the properties were in litigation at the time the actions of the United States were filed, or in which they may be litigated afterwards. But these questions are not before us. The District Court found authority for its jurisdiction of the cross-claims in section 3678 of the Internal Revenue Code.[1]

This ruling presents the question on this appeal.

In its memorandum on the cross-claims, the court stated that "the sole and only questions to be resolved and determined by the court are the rights of the parties in and to the parcels of real estate mentioned in the decree", [93 F.Supp. 177–178] of September 28, 1950. And later in the opinion: "The question now acutely presented is for this court to say what rights, if any, Harry A. Pettyjohn acquired and is entitled to maintain in the properties, whether acquired out of funds belonging to the business of Harry L. Pettyjohn or in properties where Harry L. Pettyjohn had caused title to be taken in his own name and that of the son." Discussing its jurisdiction the court said:

"* * * By paragraph (c) of said Section 3678, in a proceeding of this kind to enforce the Government's tax lien, the court is clothed with authority 'to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property and rights to property in question'. It will be noted that this is a limited jurisdiction and that this court can only adjudicate rights in respect of the interest of the parties in the property covered by the Government's lien."

1. § 3678. *Civil action to enforce lien on property*

"(a) *Filing.* In any case where there has been a refusal or neglect to pay any tax, and it has become necessary to seize and sell property and rights to property, whether real or personal, to satisfy the same, whether distraint proceedings have been commenced or not, the Attorney General at the request of the Commissioner may direct a civil action to be filed, in a district court of the United States, to enforce the lien of the United States for tax upon any property and rights to property, whether real or personal, or to subject any such property and rights to property owned by the delinquent, or in which he has any right, title, or interest, to the payment of such tax.

"(b) *Parties to proceedings.* All persons having liens upon or claiming any interest in the property or rights to property sought to be subjected as aforesaid shall be made parties to such proceedings and be brought into court.

"(c) *Adjudication and decree.* The said court shall, at the term next after the parties have been duly notified of the proceedings, unless otherwise ordered by the court, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property and rights to property in question, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property and rights to property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States.

"(d) *Receivership.* In any such proceeding, at the instance of the United States, the court may appoint a receiver to enforce the lien, or, upon certification by the Commissioner during the pendency of such proceedings that it is in the public interest, may appoint a receiver with all the powers of a receiver in equity."

There is an apparent conflict between the District Court's limitation of its jurisdiction as set out in its memorandum opinion on the cross-claims and the exercise of that jurisdiction in its decree. Having stated in its opinion that its jurisdiction was limited to the determination of the rights of the cross-claimants in specific real property, the court in its decree proceeded to adjudicate conflicting claims to personal property in which, after its decree of September 28, 1950, the United States neither claimed nor had an interest.

We turn to a consideration of section 3678. Beyond indicating the intention of Congress that suits to enforce liens of the United States for taxes shall be tried in the district courts of the United States, the section is procedural in character. It does not purport to confer upon Federal district courts a jurisdiction any broader or more exclusive than that defined in applicable sections of the Judicial Code, 28 U.S.C. §§ 1331–51. The action to enforce a lien for taxes on the property of a delinquent taxpayer against the taxpayer and those claiming under him is an action arising under the laws of the United States in which the United States is plaintiff and over which the district courts have jurisdiction. We can not suppose that by the provisions of section 3678 Congress intended to confer on Federal district courts a jurisdiction over controversies wholly between citizens of the same State, a jurisdiction which the Constitution, Article 3, Section 2, by failing to grant to the courts of the United States has denied. The question to be decided in such an action is the right of the United States to a lien upon the properties involved as against all claiming an interest. Claimants of interests in the property are brought in as parties defendant in order that the rights of the United States may be established as against them in one action, and the relative rights of the United States and other claimants completely and finally determined. When that is done, the rights of the United States are fully protected. Claims of defendants as against each other are of no further importance in the complete adjudication of the main action.

Here, the record shows that in the actions brought by the United States all of the parties consented to a decree which impressed prior liens in favor of the United States upon certain real properties described in the Government's actions. The controversies between the cross-claimants over their rights in the properties subject to the established liens of the United States were not thereafter within the ancillary or auxiliary jurisdiction of the District Court as incidental or necessary to its jurisdiction and complete determination of the main actions. The rights of the United States having been finally determined as against all cross-claimants could not be disturbed by subsequent litigation between cross-claimants in the District Court or in any other court.

■ Nor is there any merit in appellants' suggestion that jurisdiction of the District Court may be found in Rule 13(g) of the Rules of Civil Procedure, 28 U.S.C. The Rules of Civil Procedure are wholly procedural and neither extend nor limit the established jurisdiction of the district courts. Rule 82; Coastal Air Lines, Inc., v. Dockery, 8 Cir., 180 F.2d 874, 877; Hagan v. Central Avenue Dairy, Inc., 9 Cir., 180 F.2d 502, 17 A.L.R.2d 735.

■ Even if it could be said that the District Court's seizure of the properties involved in the cross-claims was rightful when made and that the court thereby acquired jurisdiction over claims against the property in the hands of its receiver, we think it could not with propriety proceed with the cross-claims on the facts in the present case. While it is said that a Federal court which has taken possession of property acquires exclusive jurisdiction of claims against the property in its possession, that jurisdiction is exclusive only so far as necessary in the final disposition of the issues before it. United States v. Klein, 303 U.S. 276, 281, 58 S.Ct. 536, 82 L.Ed. 840; Pennsylvania v. Williams, 294 U.S. 176, 185, 55 S.Ct. 380, 79 L.Ed. 841; Kelleam v. Maryland Casualty Co., 312 U.S. 377, 382, 61 S.Ct. 595, 85 L.Ed. 899.

The actions on the cross-claims are remanded to the District Court with directions to vacate its decree, to discharge its receiver, and to dismiss the cross-claims.