**Linda Levin WAAG, Plaintiff,**

v.

**Edward Hersey HAMM and Red River Valley Investments Company, Defendants.**

No. CIV. A. 97–B–2310.

United States District Court, D. Colorado.

July 23, 1998.

Jeremy M. Bernstein, Aspen, CO, I.H. Kaiser, Eugene M. Sprague, Berenbaum, Weinshienk & Eason, P.C., Denver, CO, for Plaintiff.

R. Brooke Jackson, M. Teresa Fox, Holland & Hart, Denver, CO, Daniel S. Mason, Joseph W. Bell, Furth, Fahrner & Mason, San Francisco, CA, for Defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Defendants, Edward Hersey Hamm ("Hamm") and Red River Valley Investments Company ("Red River") (collectively, "defendants"), move for appointment of a receiver to maintain and protect certain real property located in Aspen, Colorado. Plaintiff, Linda Levin Waag ("Waag"), objects to receivership. Jurisdiction exists pursuant to 28 U.S.C. § 1332 and this court's inherent equity jurisdiction. For the reasons set forth below, I deny defendants' motion.

### I. BACKGROUND

The following material facts are undisputed unless otherwise noted. Waag and Hamm began a twenty-four year personal and intimate relationship in 1972. During much of this relationship, Hamm provided financial support to Ms. Waag. Beginning in 1984, Hamm allegedly encouraged Waag to quit her job in St. Paul, Minnesota and move to Aspen, Colorado. In accordance with this alleged encouragement and with funds provided by Hamm, Waag purchased an Aspen condominium known as the "Concept 600 Condominium" in 1986. At the closing, Hamm conveyed title to Waag pursuant to their mutual agreement.

In 1988, Hamm purchased a larger townhouse located at 710 Hyman Street in Aspen ("the townhouse") for approximately $810,000. The townhouse is now worth approximately $1,500,000. Waag alleges that Hamm agreed to purchase the townhouse for her because the Concept 600 Condominium was too small to accommodate Waag and her daughter. She contends that, pursuant to their initial agreement struck before the closing, Waag would sell the Concept 600 Condominium, pay $22,000 of the required down payment, Hamm would pay the remaining balance, and the townhouse would be acquired in her name.

Waag further contends that, on January 21, 1988, just prior to the closing scheduled for February 1, 1998, Hamm told her that it was necessary to put the title in the name of Red River for taxation and legal purposes. In a letter dated January 21, 1998 and allegedly authored by Hamm, he states:

P.S. IMMEDIATELY DESTROY THIS LETTER.

\*    \*    \*    \*    \*    \*

For legal reasons we have to put the name of the new condo in a partnership name, not in your name. We will pay the property taxes but you please pay all the co-op fees etc. Send the tax bills to me here.

(Ltr. from Hamm to Waag of 1/21/98, Plf.'s Ex. C.) Waag maintains that Hamm told her the main legal reason for transfer of title to Red River was to hide the property's existence from his wife.

Waag contends that she initially invested $72,000 in the Hyman Street townhouse, composed of a $12,000 down payment and $60,000 for improvements. Waag derived rental income from the Concept 600 Condominium until she sold it on March 29, 1991 for approximately $200,000. Waag alleges that she paid the proceeds to Red River "upon the representation of Mr. Hamm that I was, for all intents and purposes, the owner of the 710 Hyman property." (Aff. of Waag ¶ 24, Plf.'s Ex. A.) Waag further maintains that, since the purchase of the townhouse and until recently, Hamm represented to her and others that she owned the townhouse with "no strings attached." (Aff. of Waag ¶ 25, Plf.'s Ex. A.)

Hamm presents a different view of things. He contends that he permitted Waag to reside in the townhouse since its purchase in 1988 by Red River. He alleges that he has paid all of the taxes, townhouse fees, and maintenance fees. He also denies that he agreed to give the townhouse to Waag. In 1996, Red River purportedly conveyed title

to Hamm as trustee of an undisclosed revocable trust. In May 1997, Hamm allegedly notified Waag that he would permit her to lease or occupy the townhouse until June 1998.

Waag commenced this action on September 25, 1997 in District Court for the County of Pitkin, Colorado. Defendants removed the action to this court on October 24, 1997 pursuant to 28 U.S.C. 1441(b). Waag avers five claims for relief: (1) breach of oral contract (two counts); (2) promissory estoppel (two counts); (3) specific performance; (4) quiet title; and (5) fraud. She seeks to enforce Hamm's alleged oral agreements regarding the townhouse and her continued financial support. Waag currently leases the townhouse to Marjorie Wallace ("Wallace") for $5,200 per month. The one-year lease expires on November 1, 1998. Wallace has the option to extend the lease through May 1, 1999. Trial is scheduled to commence on March 22, 1999.

## II. LEGAL STANDARDS FOR APPOINTMENT OF RECEIVER

◼ "A receiver is an indifferent person between parties appointed by the court to receive the rents, issues, or profits of land, or other thing in question ... pending the suit, where it does not seem reasonable to the court that either party should do it." *Booth v. Clark,* 58 U.S. 322, 331, 17 How. 322, 15 L.Ed. 164 (1854); *accord Comm'r of Internal Revenue v. Owens,* 78 F.2d 768, 773 (C.C.A.10th 1935). A receiver appointed by a federal court is an officer of the court who, once appointed, shall manage and operate the property according to the laws of the state where the property is located. 28 U.S.C. § 959(b) (1997). Like injunctive relief, receivership is not a positive right. Rather, it is an extraordinary equitable remedy that lies in the discretion of the court, justifiable only in extreme situations. *Kelleam v. Maryland Cas. Co. of Baltimore, Md.,* 312 U.S. 377, 381, 61 S.Ct. 595, 85 L.Ed. 899 (1941); *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.,* 999 F.2d 314, 316 (8th Cir.1993); *Macon Lumber Co. v. Bishop & Collins,* 229 F.2d 305, 307 (6th Cir.1956).

◼ A federal court may appoint a receiver only if it has subject matter jurisdiction over the underlying action. Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 2985 (1997) (hereinafter "Wright, Miller & Kane"). A federal court, however, derives its power to appoint a receiver from its equity jurisdiction, not its subject matter jurisdiction. *Burnrite Coal Briquette Co. v. Riggs,* 274 U.S. 208, 212, 47 S.Ct. 578, 71 L.Ed. 1002 (1927); *Inland Empire Ins. Co. v. Freed,* 239 F.2d 289, 292 (10th Cir.1956). Thus, a federal court should appoint a receiver only when appointment is "auxiliary to some primary relief which is sought and which equity may appropriately grant." *Kelleam,* 312 U.S. at 381, 61 S.Ct. 595. Further, the party seeking receivership must have a legal or equitable substantive right in the property he wishes to seize, which substantive right must amount to more than a mere claim. A district court, therefore, will not appoint a receiver at the insistence of a simple contract creditor. Wright, Miller & Kane § 2983.

◼ Whether a federal court should appoint a receiver in a diversity action presents a question resolved by federal law. *Maxwell v. Enterprise Wall Paper Mfg. Co.,* 131 F.2d 400, 402 (3d Cir.1942); Wright, Miller & Kane § 2983. Thus, federal procedural standards may preclude receivership even when a state statute would compel appointment in a state court of concurrent jurisdiction. *Britton v.. Green,* 325 F.2d 377, 382 (10th Cir. 1963); *Inland Empire, supra.* But see *Mintzer v. Arthur L. Wright & Co.,* 263 F.2d 823, 825 (3d Cir.1959). Factors typically influencing the district court's exercise of discretion include: (1) the existence of a valid claim by the moving party; (2) the probability that fraudulent conduct has occurred or will occur to frustrate the claim; (3) imminent danger that property will be lost, concealed, or diminished in value; (4) inadequacy of available legal remedies; (5) lack of a less drastic equitable remedy; and (6) the likelihood that appointment of a receiver will do more harm than good. *Aviation Supply Corp.,* 999 F.2d at 316–317; Wright, Miller & Kane § 2983. Yet consistent with the inherent flexibility of equity jurisdiction, no required analysis has emerged to dominate federal common law.

### III. ANALYSIS OF DEFENDANT'S MOTION TO APPOINT RECEIVER

Hamm seeks appointment of a receiver with expertise in real estate management to collect the rent, maintain the property, pay the fees and taxes, locate a new tenant after the Wallace lease expires, and generally take responsibility for the property pending determination of this case on its merits. As grounds for receivership, Hamm focuses on the manner in which Waag leases the townhouse to Wallace. On May 28, 1997, Waag recorded the signed lease with the Pitkin County Clerk and Recorder's Office. The recorded lease states a rental payment of $1,000 per month. The actual lease payment is $5,200 per month, evidenced by a separate signed lease. Waag explained the discrepancy during her deposition as follows:

Waag: Well, it's—when [Wallace] wanted to rent the house from me, she said she would like to rent it in cash. Whereas we were talking to a realtor and the realtor told me that if you're getting paid in cash, you might not have to declare all the income. Just make a lease, make two leases, one for the one amount and make a lease for the lesser amount and then you will only have to pay money on let's say the $1,000 a month.

Q: What realtor told you that?

Waag: I'm not going to say. But all I can tell you is it's not going to happen. I'm going to declare all this income. It was a mistake. My attorney clearly pointed it out that it was a very foolish thing to do.

\*    \*    \*    \*    \*    \*

Q: In other words ... with due respect what you did here is you decided to show one lease and record it at a thousand a month as if that were what was really happening, whereas in truth you were getting $5,200 a month.

Waag: That's right.

Q: And taking all but the thousand in cash so you wouldn't have to pay tax on it?

Waag: Right, but I am not going to do that. I have been told that it was a very foolish thing to do and everything else I have declared, all other rents that I have ever received from Concept 600, the other three leases that you have seen, and this one as well will be declared in its full amount. It was a thought and not an action that's going to be acted on.

(Depo. of Waag at 157–158, Def.'s Ex. A.) Hamm contends this arrangement "casts serious doubt on Waag's integrity and judgment, not to mention the integrity and judgment of the tenant." (Def.'s Reply Brf. at 4.)

Applying the factors listed above, I conclude that receivership is not justified. Hamm has not demonstrated that fraudulent conduct has occurred or will occur to frustrate his interest in the townhouse, if any. Waag disclaims any intention to evade tax liability. Her decision to follow the misguided advice of her realtor and record a false lease does not frustrate Hamm's alleged interest in the townhouse.

Nor has Hamm shown the existence of imminent danger that the townhouse will be lost, wasted, or diminished in value. Hamm does not allege that Wallace or Waag have damaged or will damage the townhouse in any manner. There is simply no evidence of waste or dissipation.

Hamm's interest in the lease payments, if any, is protected by the existence of adequate legal remedies. The lease transaction involves the payment of certain sums of money subject to ready calculation. Thus, should Hamm prevail on the merits, his entitlement to rent is compensable as money damages. Further, as Waag argues, she will likely prove at least her entitlement to an interest in the townhouse equal to the amount of her initial contribution towards the down payment and improvements, which amount will likely exceed the lease proceeds that will accrue before the March 1999 trial.

Nor has Hamm shown that he will likely suffer irreparable harm. Waag asserts that she has sufficient assets, derived from a recent inheritance, to account for the rental income that will accrue before the March 1999 trial. (Aff. of Waag ¶ 31, Plf.'s Ex. A.) This evidence is uncontroverted.

Lastly, receivership may do more harm than good. The cost and expense of the suggested receiver, although not disclosed by the record, is likely significant. Further, appointment of a receiver would unnecessarily complicate this action.

Accordingly, I ORDER that defendant's motion for appointment of receiver is DENIED.