## MIDSTATE AMUSEMENT CORPORATION v. RIVERS et al.

### No. 111.

District Court, E. D. Washington, S. D.
March 31, 1944.

Cameron Sherwood, of Walla Walla, Wash., for plaintiff.

W. A. Toner, of Walla Walla, Wash., for defendant Koepke, Sr.

G. S. Bond and Judd D. Kimball, both of Walla Walla, Wash., for defendants Rivers.

SCHWELLENBACH, District Judge.

Plaintiff, a Nevada corporation, brings this action against defendants Rivers, citi-

zens and residents of Washington, and defendant Koepke, citizen and resident of Oregon, to enforce a claimed constructive trust against certain real property situated in Walla Walla County, Washington. Plaintiff alleges that defendant Edwin Rivers was its resident manager in Walla Walla operating three theaters in that city for it. It is alleged that, as manager, Edwin Rivers acquired from plaintiff certain confidential and private information concerning the business activities and plans of the plaintiff in Walla Walla, particularly concerning the acquisition by plaintiff of the real estate here involved with the theater building located thereon. Plaintiff asserts that, prior to and at the time of Edwin Rivers' employment, it was negotiating for the purchase of this property, and that, by virtue of his position, Edwin Rivers became possessed of information confidential in character which enabled him and caused him to conspire with the defendants Herbert Rivers and Koepke to acquire the property through secret negotiations and concealment from the plaintiff, all of which was adverse to plaintiff's interest and violative of defendant Edwin Rivers' responsibility arising out of his confidential and fiduciary relationship to the plaintiff. The complaint alleges that the defendants conspired and took advantage of Edwin Rivers' confidential information and fiduciary relationship and that, by reason of such information and relationship, they were able secretly and surreptitiously to purchase the property. The complaint alleges the value of the property to be $7,500, and, as evidence of its willingness to do equity herein, plaintiff has deposited $10,000 to be made available to the defendants to cover reimbursement for any sum defendants may have paid for the property. Plaintiff alleges that, while title stands exclusively in the name of Koepke, he holds such title on behalf of himself and the defendants Rivers. Plaintiff prays that the Court enforce the trust which it claims has been impressed upon the property but it seeks no personal judgment against the defendants. To this complaint, each of the defendants has interposed a motion to dismiss.

Insofar as the motions present the general proposition of failure to state a claim, I approach the problem with the conviction that ordinarily charges such as are here made should not be disposed of in this manner. It is only in instances which are rare and under circumstances peculiarly impelling that the Court is justified, much less required, to make disposition of charges of fraud on the basis of pleadings alone. A business transaction has overtones, the blending of which may so change the entire climate surrounding the transaction as to force an entirely different conclusion after hearing the testimony concerning it than would result from considering a bare delineation of it by a pleader. Furthermore, every man is entitled to have his acts judged in the light of all the surrounding circumstances. That which might shock the conscience of a chancellor when viewed in one posture, might seem only reasonable and natural and ethical when viewed in another. Courts of equity usually should be diffident to hastily dispose of cases such as this on the basis of the bare pleadings.

With the foregoing reservation and explanation, I am of the belief that plaintiff has pleaded a case of constructive trust. The confidential relationship between plaintiff and Edwin Rivers and the fiduciary obligation resulting therefrom is apparent. A company operating as was the plaintiff was required to repose a large degree of confidence in its local manager. Equity cannot permit him and his co-conspirators to profit through the surreptitious and concealed breach of that confidence.

"Where a fiduciary in violation of his duty to the beneficiary acquires property through the use of confidential information, he holds the property so acquired upon a constructive trust for the beneficiary." Restatement of the Law, Restitution, § 200. "Where a fiduciary in violation of his duty to the beneficiary * * * causes property to be transferred to a third person, the third person, * * * if he had notice of the violation of duty, holds the property upon a constructive trust for the beneficiary." Idem, § 201(1). "Where a fiduciary in violation of his duty to the beneficiary communicates confidential information to a third person, the third person, if he had notice of the violation of duty, holds upon a constructive trust for the beneficiary any profit which he makes through the use of such information." Idem, § 201(2). It was upon this theory that the Circuit Court of Appeals for the Ninth Circuit, in Fleishhacker v. Blum, 109 F.2d 543, impressed a trust upon the profits acquired by Fleishhacker through bonuses received by him from the Barde Steel Products Corporation for procuring loans from the bank of which he was an officer.

740

The same rule has been applied by various courts. Casari v. Victoria Amusement Enterprises, Inc., 327 Pa. 382, 194 A. 503; Ballard v. Claude Drilling Co., 149 Kan. 506, 88 P.2d 1021, 1023; Van Sickle v. Keck, 42 N.M. 450, 81 P.2d 707, 717; Lydia E. Pinkham Medicine Co. v. Gove, 303 Mass. 1, 20 N.E.2d 482, 489; Caveney v. Caveney, 234 Wis. 637, 291 N.W. 818, 823; Risvold v. Gustafson, 209 Minn. 357, 296 N.W. 411, 412; Meade v. Vande Voorde, 139 Neb. 827, 299 N.W. 175, 176, 137 A.L.R. 554; In re Browning's Estate, 176 Misc. 308, 27 N.Y.S.2d 318, 320.

Mr. Justice Cardozo, when serving on the Court of Appeals of the State of New York in Meinhard v. Salmon, 249 N. Y. 458, 164 N.E. 545, 546, 62 A.L.R. 1, stated the rule: "Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. * * * Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court."

Judge Sanborn, in Trice v. Comstock, 8 Cir., 121 F. 620, 622, 61 L.R.A. 176, detailed the rationale of the rule in language which frequently has been the subject of quotation in many later cases and textbooks. See 26 R.C.L. p. 1247, Trusts, § 93. This is what Judge Sanborn said:

"For reasons of public policy, founded in a profound knowledge of the human intellect and of the motives that inspire the actions of men, the law peremptorily forbids every one who, in a fiduciary relation, has acquired information concerning or interest in the business or property of his correlate from using that knowledge or interest to prevent the latter from accomplishing the purpose of the relation. If one ignores or violates this prohibition, the law charges the interest or the property which he acquires in this way with a trust for the benefit of the other party to the relation, at the option of the latter, while it denies to the former all commission or compensation for his services. This inexorable principle of the law is not based upon, nor conditioned by, the respective interests or powers of the parties to the relation, the times when that relation commences or terminates, or the injury or damage which the betrayal of the confidence given entails. It rests upon a broader foundation, upon that sagacious public policy which, for the purpose of removing all temptation, removes all possibility that a trustee may derive profit from the subject-matter of his trust, so that one whose confidence has been betrayed may enforce the trust which arises under this rule of law although he has sustained no damage, although the confidential relation has terminated before the trust was betrayed, although he had no legal or equitable interest in the property, and although his correlate who acquired it had no joint interest in or discretionary power over it. The only indispensable elements of a good cause of action to enforce such a trust are the fiduciary relation and the use by one of the parties to it of the knowledge or the interest he acquired through it to prevent the other from accomplishing the purpose of the relation.

"And, within the prohibition of this rule of law, every relation in which the duty of fidelity to each other is imposed upon the parties by the established rules of law is a relation of trust and confidence. The relation of trustee and cestui que trust, principal and agent, client and attorney, employer and an employé, who through the employment gains either an interest in or a knowledge of the property or business of his master, are striking and familiar illustrations of the relation. From the agreement which underlies and conditions these fiduciary relations, the law both implies a contract and imposes a duty that the servant shall be faithful to his master, the attorney to his client, the agent to his principal, the trustee to his cestui que trust, that each shall work and act with an eye single to the interest of his correlate, and that no one of them shall use the interest or knowledge which he acquires through the relation so as to defeat or hinder the other party to it in accomplishing any of the purposes for which it was created."

Viewing these statements of the rule as a yardstick, plaintiff has a case of constructive trust if it can prove the allegations of its complaint. Defendants rely on Sug-

arman Iron & Metal Co. v. Morse Bros. Machinery & Supply Co., D.C., 19 F.2d 589. In that decision, the judge held that no constructive trust was established. However, that case lacked the confidential fiduciary relationship alleged here. In that case, three rival parties decided jointly to purchase a piece of property. They entrusted to one the negotiation of the purchase. In violation of his agreement, he purchased it on his own behalf. The Court held it to be a simple breach of contract and saw nothing in the transaction from which a trust could be constructed. The case of Carkonen v. Alberts, 196 Wash. 575, 83 P.2d 899, 912, 135 A.L.R. 209, does not reach the problem confronting me. While the opinion is voluminous and it contains the citation of literally scores of cases, the decision turned exclusively upon the question as to whether or not the provision of the statute (Rem.Rev.Stats. Sec. 5825) providing that "an agreement employing an agent or broker to sell or purchase real estate for compensation shall be void unless such agreement be in writing and signed by the party to be charged therewith." On page 605 of the opinion in 196 Wash., on page 912 of 83 P.2d, 135 A.L.R. 209, the Court said: "The statute declares, without qualification, that an oral agreement employing an agent or broker to sell or purchase real estate for compensation or a commission shall be void." We are not dealing with any such oral agreement here. Edwin Rivers was not employed as a real estate broker or agent. He was employed as plaintiff's local general manager. The statute of frauds is not involved.

The defendants contend that this Court is lacking in jurisdiction because the matter in controversy does not exceed $3,000. It is conceded that the value of this land is at least $7,500. That is the matter in controversy. Woodside v. Ciceroni, 9 Cir., 93 F. 1; Peterson v. Sucro, 4 Cir., 93 F.2d 878, 114 A.L.R. 890; Jones v. Box Elder County, 8 Cir., 52 F.2d 340.

Defendant Koepke further asserts that this Court lacks jurisdiction over him because of his residence in Oregon. Plaintiff does not seek to assert general jurisdiction over Koepke. It seeks to enforce an equitable lien upon or claim to the title to real estate within the District wherein the suit is brought. It relies upon Sec. 57 of the Judicial Code, 28 U.S.C.A. § 118. As Judge Dietrich pointed out in Consoli-dated Interstate Callahan Mining Co. v. Callahan Mining Co., D.C., 228 F. 528, 530, this is a case in which that statute is peculiarly applicable. Judge Dietrich said: "It will be borne in mind that the primary purpose of the statute was to enable federal courts to acquire jurisdiction of the persons of non-resident parties whose presence might be necessary to an adjudication of local actions touching the status of property within the district, in cases depending for federal jurisdiction upon diversity of citizenship. By implication it has been held to create an exception to the statutory rule, applicable to this general class of cases, requiring that they be brought in the district of the residence of one of the parties. Now, when we consider its primary purpose and the comprehensive terms in which it is couched, I am inclined to think it should receive a liberal construction, with a view to giving effect to the legislative intent. Otherwise, a party having a local cause of action clearly falling within federal jurisdiction could not prosecute it in a federal court, for the reason that he could not bring his adversary into the only court having jurisdiction of the subject-matter. Logically it follows that in considering its secondary purpose it must have the same construction. It is as broad for one purpose as it is for the other. In every case where it authorizes the constructive service of process it necessarily operates to create an exception to the general rule of the venue of actions. If, therefore, the issue between the plaintiffs and the defendant affects real or personal property within this district, and involves the status thereof in such a manner that, if the defendant could not be found in the district, it could be proceeded against upon constructive service, then the objection to the venue is without merit." See Fischer v. American United Insurance Co., 314 U. S. 549, 62 S.Ct. 380, 86 L.Ed. 444.

What plaintiff seeks to do here is to enforce an equitable lien upon the property. See Kelleam v. Maryland Casualty Co., 10 Cir., 112 F.2d 940, reversed on other grounds, 312 U.S. 377, 61 S.Ct. 595, 85 L. Ed. 899. See, also, Findlay v. Florida East Coast Ry. Co., D.C., 68 F.2d 540, where the reason for the rule is outlined but the opposite result reached as to the facts. This is not a case like Wilhelm v. Consolidated Oil Corporation, 10 Cir., 84 F.2d 739, 746, in which "the primary relief

sought by all the plaintiffs is a rescission and cancellation of the tri-party agreement and the conveyances and transfers made pursuant thereto" and in which the Court said: "Should the relief be limited to the properties in Oklahoma, the decree would amount to only a partial rescission of an indivisible contract affecting properties both within and without the state." Nor is it like the case of Dan Cohen Realty Co. v. National Savings & Trust Co., 6 Cir., 125 F.2d 288, the objective of which was to compel a nonresident to sign a lease. That was merely an action for specific performance. This case comes within the purview of the second essential requisite, as stated by Judge Dobie in McQuillen v. National Cash Register Company, 4 Cir., 112 F.2d 877, 880. If a constructive trust was created here, it was created prior to the institution of this action by the activities of the defendants. This is not "a proceeding to create for the first time a claim to the property as the effect of the proceeding itself." The $10,000 was deposited simply to substantiate plaintiff's assertion that it was willing to do equity. Sugarman Iron & Metal Co. v. Morse Bros. Machinery & Supply Co., supra, does not help defendant on this point. This for the reason that the Court held there was no constructive trust and that, consequently, the action was one in personam rather than a local action affecting real property. This is peculiarly true in view of the holding in State ex rel. Hamilton v. Superior Court, 200 Wash. 632, 635, 94 P.2d 505, 507, where it was said: "By statute (Rem.Rev.Stat. §§ 886, 204) and by decision (Ryckman v. Johnson, supra [190 Wash. 294, 67 P.2d 927]) we are committed to the rule that where, as in the case at bar, an action is brought to cancel a deed on the ground of fraud and to revest title to the land covered by that deed in plaintiff, that action is one to determine the title to real property as the subject of that action involves, the object of that action is directed toward, the land and the title thereto." Plaintiff here has brought itself strictly within the statute. 28 U.S.C.A. § 118. It seeks no judgment against Koepke. It asks no personal relief from him. It seeks only to have title adjudged to be in it while admitting the Court's power to compel it to pay to the defendants such sum as to the Court may seem just and equitable in the premises.

The motion to dismiss will be denied.