Shannon, Appellant, *v.* Baltz.

Argued January 5, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

432

*Lester J. Schaffer,* with him *Isaac D. Levy,* for appellants.

*Russell J. Brownback,* with him *Roger B. Reynolds,* for appellees.

OPINION BY MR. JUSTICE BOK, March 15, 1960:

The chancellor adjudged the case for the defendants and the plaintiffs have appealed.

It involves slightly over seven acres of land in Gladwyne, Montgomery County, which ran behind several adjoining properties and would have protected them against further development. Nine landowners, including plaintiffs, were originally involved. One of them, Dr. Shannon, after discussing the situation with the others, approached defendant Baltz & Company, a real estate brokerage firm, in January, 1955, and spoke with its employe Pinder. The doctor testified: "And I assigned him the task and asked him if he would proceed to secure and buy this piece of ground for us. And he said he would." From this and other evidence the chancellor found as a fact: "Defendants were the agents of the plaintiffs and others, to obtain information and to negotiate an offer to purchase the premises in controversy."

At another meeting, in February, to which Pinder brought Alden, an associate of Baltz, a price of $3000 an acre, plus a commission of $1000, was agreed upon as an offer to be made to the Waverly Corporation, owner of the seven acres. This price caused three of the neighbors to drop out, in March, but Shannon there-

after gave Pinder the names of other prospective purchasers.

On May 22nd, Alden, without a word to anyone, bought the property for himself as a result of "hearing something". The next day Loesche, one of the group neighbors, asked Alden why he had bought the ground without giving the group more time.

On May 28th, Alden talked with Loesche and Galey, another of the neighbors, about the group not getting together and offered them a seven days' option to take an assignment of his interest and to settle within ninety days for $3000 per acre and $1000 commission. Hearing nothing from Loesche and Galey, Alden wrote Loesche on June 6th, "assuming that you are acting as spokesman for the group" and terminating the option. Dr. Shannon was not sent a copy of this letter.

On June 9th plaintiff Siegel wrote to Alden after speaking with him, saying that Loesche was not then spokesman for the group, referring to the option, and declaring that the group wished to exercise it. Alden did not reply.

On June 14th Baltz and Alden wrote to Siegel saying that they had signed an agreement to buy the property.

In August the appellees offered to sell to each appellant one lot at the price of $7300 per acre.

On September 8th, with Baltz putting up half of the consideration, the seven acres were conveyed to Alden for $21,000, without commission.

Upon this recital of the facts as found by the chancellor, it would be hard to imagine a case more clearly in violation of the legal adage that unless otherwise agreed upon an agent is by duty bound not to compete with his principal over the subject matter of the agency: Restatement, Agency, §393; *Hamberg v. Barsky*, 355 Pa. 462 (1947), 50 A. 2d 345; *East and West Coast Service Corp. v. Papahagis*, 344 Pa. 183 (1942), 25 A.

2d 339; *Kern v. Smith*, 290 Pa. 566 (1927), 139 A. 450; *Schrager v. Cool*, 221 Pa. 622 (1908), 70 A. 889.

The chancellor admitted that Alden "technically violated his trust" by purchasing the property for himself, but forgave him because he then offered to assign his rights to the group on the same terms. Such an offer cannot cleanse the slate, if only for the reason that the owner of the property had a firm commitment from Alden and this fact altered the appellants' position in bargaining further with the owner.

The court below and the appellees argue that the group was nebulous, that its members procrastinated, and that upon three of them dropping out it ceased to be a group at all. On the last point, if so, it is indeed odd that after the three withdrew in March Alden should still consider the remaining ones as a group in May and make to them, through Loesche, his offer of an option. As for the rest, we think that the charge of opacity and procrastination squarely faces the appellees. They were employed not merely to gather information and solicit other members to the group, as the chancellor remarks in his adjudication, but "to negotiate an offer to purchase" as the chancellor established in his findings of fact. If, as he goes on to say in his discussion, the agency never took shape because no specific functions were assigned either to it or by it, it is rather the fault of Baltz & Company than of the group. In view of appellees' undertaking, it sounds hollow to hear them say that Dr. Shannon was lax in not taking the initiative in having an agreement of sale prepared. That was the logical job of the appellees.

A real estate broker engaged to negotiate an offer to purchase a specific piece of ground has more to do than sit by and watch his clients procrastinate: it is in his charge to forward the thing he agreed to do. Baltz did nothing, so far as we can see, but talk and

watch, until the chance came to snap up the property for himself.

Nor are we impressed by the argument that because notice to one of a group may be notice to all, Alden cleared himself when he offered the option to the group, through Loesche. To give the group a spokesman and a shape, by some form of agreement or usage in the beginning, was what Alden and his associates should have done if later they should seek to give their actions a status by notifying any member of the group who was handy. They may not blow hot and cold in any such manner. Appellees are in no position to complain that Siegel was three days late in exercising the option. They had no equities entitling them to make seven or seventy day terms, and even if they had, they have shown no damage from the short delay.

Under these circumstances appellees hold the property in constructive trust for the appellants: *Casari v. Victoria Amusement Enterprises*, 327 Pa. 382 (1937), 194 A. 503. We agree with the appellees that the evidence establishing such a trust must be clear, precise, and indubitable: *Danner v. Danner*, 366 Pa. 178 (1950), 77 A. 2d 217; and we think that what is before us, taken from the chancellor's findings, meets the test. In our opinion the chancellor and the court below misapplied the law to the clearly proven facts.

Finally, we do not share the concern of the court below that the record is in such state that the court would be at a loss to determine the rights of the plaintiffs and their neighbors in the ground. As there are but two appellants, we feel sure that upon further proceedings the respective rights of the parties will be made plain, as they easily can be by stipulation or agreement.

The decree is reversed at appellees' cost and the record is remanded for further proceedings consonant with this opinion.