## Seaboard Industries, Inc. v. Joachim

*Arlin M. Adams, Ronald H. Isenberg* and Philip P. *Kalodner*, for plaintiffs.

*Theodore Voorhees* and Arthur E. Newbold, IV, for defendants.

GRIFFITHS, J., August 14, 1968.—These three actions, consolidated for trial, are by a Pennsylvania business corporation, Seaboard Industries, Inc., against one of its shareholders, Walter F. Joachim, a corporation organized by him, known as Joachim, Inc., and against Albert B. Monaco, Esq., sometime counsel and secretary of plaintiff corporation, and by the Estate of Andrew J. Breslin against Seaboard and W. F. Joachim.

The facts are set forth in the

FINDINGS OF FACT

1. The court finds as facts those averments from plaintiff, Seaboard Industries, Inc.'s original and amended complaint against Walter F. Joachim and Joachim, Inc., (and of the answer where indicated), plaintiff's reply to defendant's new matter, and plaintiff's petition for further or additional preliminary equitable relief, as agreed to by the parties, as more fully set forth in the notes of testimony, pages 132 to 166, and the court incorporates the same herein by reference.

2. The court finds as facts those averments from plaintiff, Seaboard Industries, Inc.'s complaint against

Albert B. Monaco (and of the answer where indicated), other pleading admissions, as indicated, and exhibits as agreed to by the parties, as more fully set forth in the notes of testimony, pages 181 to 219, and the court incorporates the same herein by reference.

3. The court adopts as its own plaintiff Seaboard's requests for findings of fact nos. 2 to 42, inclusive, except that the amount set forth in no. 42 is $75,000, not $7,500; and the court further adopts said requests nos. 43 to 98, inclusive; 101 to 119, inclusive; 122 to 171, inclusive; 178 to 180, inclusive; 188 to 190, inclusive; 196, 198, 199 and 201.

The court finds, in addition:

202. The business opportunities and interest, the subject matters of this suit, were, in fact, within the scope of the corporate plaintiff's normal business activities.

203. Plaintiff corporation was in position to avail itself of such opportunities.

204. Information utilized by defendant Joachim in acquiring the interests, the subject matters of this suit, came to him by reason of his official position with plaintiff corporation.

205. Acquisition of the said interests by defendant Joachim was preceded by negotiations which said defendant made in behalf of plaintiff corporation.

206. The fair and reasonable counsel fee, properly allowable to plaintiff corporation against defendants Joachim and Monaco, under the circumstances of this case, is $25,000.

207. The fair and reasonable costs and expenses properly allowable to plaintiff corporation against defendants Joachim and Monaco, is $7,800.

208. No punitive damages should be assessed against either of said defendants.

The court adopts as its own defendants' requests for

findings of fact nos. 1 to 6, inclusive; 12, 13, 16, 18, 21, 36, 43, 44 and 45.

The court adopts as its own plaintiff Breslin's request for finding of fact no. 4.

## DISCUSSION
### Re Corporate Opportunity

This is a classic case of a director and corporate officer diverting for himself a business opportunity within the scope of his corporation's normal activities. Seaboard Industries, Inc.'s normal business activities certainly encompassed the interests which Walter F. Joachim diverted for himself or his controlled corporation, Joachim, Inc.

Such activity by a director is not condoned by the law.

Officers and directors of business corporations stand in a fiduciary relation to the corporation: 15 PS §1408, Business Corporation Code.

A director owes a duty of loyalty to his corporation, and, in the words of former Mr. Chief Justice, then Mr. Justice, Stern, the law does not "permit a fiduciary to place himself in a position which invites conflict between self-interest and integrity": Bailey v. Jacobs, 325 Pa. 187, 194 (1937).

The preceding findings of fact, all of which we find credible and believable, clearly show that Joachim was torn between this conflict, and he chose the former of the two alternatives.

Here, negotiations for acquisition by the corporation, made by Joachim himself, had preceded his own acquisition of the interests. As was said in Lutherland, Inc. v. Dahlen, 357 Pa. 143, 151:

"If there is presented to . . . [a director] a business opportunity which is within the scope of [the corporation's] own activities and of present or potential advantage to it, the law will not permit him to seize the opportunity for himself; if he does so, the corporation

may elect to claim all of the benefits of the transaction".

Also, in Vulcanized Rubber & Plastics Company v. Scheckter, 400 Pa. 405 (1960), the court stated:

"There is no doubt that the relationship between a corporation and its officers and directors, as well as its lawyers and accountants, is such that these 'fiduciaries' cannot act contrary to or compete with the interests of the corporation. Predominantly for the protection of shareholders, there has developed in corporate law, a doctrine of 'Corporate opportunity' under which a corporation has the right to legal redress where one of its fiduciaries has in some way usurped some advantageous opportunity in which the corporation had an existing interest or where the opportunity is necessary for corporate existence or prosperity".

See also in our circuit Higgins v. Shenango Pottery Company, 256 F. 2d 504 (1958), where it was held a prima facie case had been made out, and, after trial, at 279 F. 2d 46 (1960), the court directed judgment against additional defendants who had been exonerated by the trial court, certiorari denied 364 U. S. 899, 81 S. Ct. 232, 5 L. Ed. 2d 193.

Defendant, Joachim, the acquirer, being the very director, as president, designated as the corporation's representative to bargain for the property, has violated his duty of loyalty and good faith. See Kelly v. 74 & 76 West Tremont Ave. Corp., 4 Misc. 2d 533, 151 N. Y. S. 2d 900 (Sup. Ct., 1956), modified Procario v. 74 & 76 West Tremont Ave. Corp., 3 A. D. 2d 821, 160 N. Y. S. 2d 932 (1957), reargument denied 3 A. D. 2d 894, 163 N. Y. S. 2d 362 (1957), affirmed 3 N. Y. 2d 973, 169 N. Y. S. 2d 39, 146 N. E. 2d 795 (1957); Trayer v. Bristol Parking, Inc., 198 Va. 595, 95 S. E. 2d 224 (1956).

The case of Robinson v. Brier, 412 Pa. 255 (1963), relied on by defendants, is easily distinguishable. There, the corporation rejected the opportunity to acquire the asset, the asset not being appropriate for its corporate existence. Further, the corporation knew the officer was making the profits, which is contrary to our findings of fact in this case.

An oft-cited case in this area of law is Guth v. Loft, Inc., 23 Del. Ch. 255 (Supreme Ct., 1939), affirming 23 Del. Ch. 138, (Ch., 1938), involving Loft, Inc. (a manufacturer and distributor of soft drinks), Guth being its president, and Pepsi-Cola Company. There, Guth used Loft's money to buy the controlling shares of Pepsi-Cola, and thereby acquire its secret formula. The product was then sold to Loft, at cost plus 10 percent. The court treated Guth as a constructive trustee and ordered him to transfer the shares to Loft, their value having then increased a thousand times. While Loft's funds were used, the chancellor indicated his judgment would have been the same even if they had not been: 23 Del. Ch. 138, at page 168.

Joachim, the defendant, certainly diverted a corporate opportunity.

### Re Financial Ability

Consideration of the financial ability of Seaboard to acquire the assets is a question that must be discussed. First, we have found that Giles, Sorenson and Hawley, shareholders of Seaboard with Joachim, could have found the funds necessary to make the purchase. Joachim borrowed most of the money he used to make the purchase; the financial status of the other three was such that they also could have, had Joachim fully disclosed all the facts to them. Instead, Joachim took advantage of the opportunity for himself rather than meeting the call for protection of the corporation of which he was president.

Counsel have not helped us much with case law on the subject of financial ability of the corporation to acquire the asset, and our own research has been somewhat limited. We have found what we believe to be the leading case, commonly known as the Sonora Products Case, Irving Trust Co. v. Deutsch, 73 F. 2d 121 (2d Cir., 1934), certiorari denied 294 U. S. 708, 55 S. Ct. 405, 79 L. Ed. 1243 (1935), reargument denied 294 U. S. 733, 55 S. Ct. 514, 79 L. Ed. 1262 (1935). The excuse there for the erring director's conduct was that the corporation itself was financially unable to muster the $100,000 needed for the option to acquire corporate shares in another company that controlled patents needed in the business of Sonora. The district court accepted this explanation, but the court of appeals, in holding the truth of the explanation was immaterial, said:

"(The facts) tend to show the wisdom of a rigid rule forbidding directors of a solvent corporation to take for their own profit a corporate contract on the plea of the corporation's financial inability to perform".

See also Parker v. Nickerson, 112 Mass. 195, 200 (1873) ; Keokuk Northern Line Packet Co. v. Davidson, 95 Mo. 467 (1888) ; Red Top Cab Co. v. Hanchett, 48 F. 2d 236, 238 (1931).

Nor does the fact that Joachim made advances and guarantees help him under the law: Casari v. Victoria Amusement Enterprises, Inc., 327 Pa. 382 (1937) ; Union Ice Company of Philadelphia v. Hulton, 291 Pa. 416 (1928) ; Weisbecker v. Hosiery Patents, Inc., 356 Pa. 244 (1947).

This important aspect of the case cannot be resolved in favor of these defendants.

### Re Attorney's Role

Albert B. Monaco, Esq., attorney for Joachim, also stands in a fiduciary relationship and is responsible

for any unjust enrichment he received: Vulcanized Rubber & Plastics Company v. Scheckter, 400 Pa. 405, 412 (1960). We do believe, however, his fee of $7,500 should be allowed.

### Re Defense of Laches and Estoppel

Failure of defendant Joachim to make full disclosure and failure to show prejudice, as well as failure to show reliance on assertions by plaintiff, make these defenses unavailable: Young v. Hall, 421 Pa. 214 (1966); Hertz Corp. v. Hardy, 197 Pa. Superior Ct. 466 (1962).

### Re Attorney's Fees

Restatement, Torts, §914, provides as follows:

"A person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonable necessary loss of time, attorney fees and other expenditures thereby suffered or incurred".

Seaboard Surety Co. v. Permacrete Construction Corp., 221 F. 2d 366 (3rd Cir., 1955); and Savitz v. Weinstein, 395 Pa. 173 (1959), both allowed counsel fees in analogous cases.

### Re Punitive Damages

Restatement, Torts, §908(2) provides as follows:

"Where punitive damages are permissible, *their allowance and amount are within the discretion of the trier of fact.* In assessing such damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff which the defendant caused or intended to cause, and the wealth of the defendant".

Allowance of punitive damages and the amount thereof is within the discretion of the trier of fact. While the litigation was protracted, we do not find in the exercise of our discretion, defendant Joachim's acts were so despotic, oppressive and harassing as to

invoke assessment of punitive damages: Cf. Stone v. C.I.T. Corporation, 122 Pa. Superior Ct. 71, 79 (1936).

### Re Claim of Breslin

In this regard, we believe the stockholders intended to have Breslin receive five percent of all which was to accrue from the banks, and the contract should, accordingly, be so reformed: Bollinger v. Central Pennsylvania Quarry Stripping and Construction Co., 425 Pa. 430 (1967); Kutsenkow v. Kutsenkow, 414 Pa. 610 (1964), 31 P. L. Encyc. Reformation of Instruments, 8 and 9.

Likewise, the release, executed simultaneously with the agreement of February 12, 1964, should be reformed: 31 P. L. Encyc. Release, 12 and 13.

### Re Relief

It is clear defendants Joachim and Monaco hold the acquired assets as constructive trustees, and relief should be granted in accordance with such principles of law: Restatement, Restitution, 194; Wilson v. Jennings, 344 Mass. 608 (1962), which followed the Restatement; Brooks v. Conston, 356 Pa. 69 (1947); Rivoli Theatre Company v. Allison, 396 Pa. 343 (1959); Weissman v. A. Weissman, Inc., 374 Pa. 470 (1953); Casari v. Victoria Amusement Enterprises, Inc., 327 Pa. 382 (1937); Kribbs v. Jackson, 387 Pa. 611 (1957); Shannon v. Baltz, 398 Pa. 431 (1960); Zampetti v. Cavanaugh, 406 Pa. 259, 267 (1962); Selheimer v. Manganese Corporation of America, 423 Pa. 563 (1966).

Accordingly, we make the following

### CONCLUSIONS OF LAW

1. The cause is properly before the court and the court has jurisdiction of the subject matter.

2. The court adopts as its own plaintiff Seaboard's requests for conclusions of law nos. 182 to 186, inclusive, and 197.

3. Defendants Joachim and Monaco breached their duty of loyalty and faithfulness to plaintiff Seaboard.

4. As a result of said breach, said defendants have become constructive trustees for the benefit of said plaintiff of the interests herein litigated.

5. Plaintiff Seaboard is entitled to receive from said defendants counsel fees and expenses.

6. The court adopts as its own plaintiff Breslin's request for conclusion of law no. 3.

Accordingly, the court enters the following

### DECREE NISI

1. That all consent decrees, preliminary injunctions and orders heretofore entered, remain in full force and effect until final decree, or until further order of the court.

2. It is ordered and decreed that Joachim holds title to the coal banks, the subject of this litigation, as constructive trustee for Seaboard Industries, Inc., and he is hereby directed immediately to execute any and all documents required to transfer such property to Seaboard.

3. It is ordered and decreed that Joachim holds all right and interest in the Hauto Valley agreement for Seaboard Industries, and he is hereby directed immediately to execute any and all documents necessary to transfer such interest in the name of Seaboard Industries, Inc.

4. It is ordered and decreed that Joachim holds all right and interest in the Correale agreement for Seaboard Industries, and he is hereby directed immediately to execute any and all documents necessary to assign such contract to Seaboard Industries, Inc.

5. It is ordered and decreed that Joachim and Monaco return to Seaboard any and all moneys or other consideration which Joachim or Monaco received from Pagnotti, Correale or any other third parties for coal removed or to be removed from the banks, less a credit

for the $75,000 which Joachim paid to Blue Ridge Real Estate Company for the banks and any rentals which Joachim paid out of his own funds to Hauto Valley, after filing in this court an accounting thereof.

6. It is ordered and decreed that the agreement between Seaboard and Joachim, Inc., dated "February 12", be and hereby is declared null and void, as being procured as part of a fraudulent and improper scheme.

7. It is ordered and decreed that the agreement between Monaco and Joachim by which Monaco was to receive 10 cents per ton for all coal removed from the banks, be and hereby is declared null and void as to Seaboard.

8. It is ordered that the letter of agreement, dated February 12, 1964, between Breslin and Seaboard be and hereby is reformed so that Breslin receive five percent of the proceeds by Seaboard from the Lisnock and Anderson and Hauto Valley banks until exhaustion.

9. It is ordered and decreed that the release of Breslin dated February 12, 1964, be and hereby is cancelled and declared to be null and void.

10. Joachim and Monaco are ordered to pay to Arlin M. Adams, Esq., the sum of $25,000 counsel fee and $7,800 expenses.

11. Costs to be borne by defendants Joachim and Monaco.

The prothonotary shall notify counsel of the entry of this decree nisi and, unless exceptions are filed within 20 days thereafter, the prothonotary shall, upon praecipe, enter this decree nisi as the final decree.

## OPINION SUR PLAINTIFF'S PETITION
### AND RULE IN RE COSTS

GRIFFITHS, J., October 10, 1968.—On August 14, 1968, we handed down a decree nisi in the above captioned matters. In this decree nisi we substantially found for plaintiff, and, among other things, imposed certain costs upon the defendants, Joachim and Monaco.

Plaintiff has petitioned the court, upon which a rule was granted upon said defendants to show cause why they should not immediately pay plaintiff the costs in the proceedings, or upon their failure to do so that the exceptions filed by the said defendants be stricken.

Plaintiff's argument is bottomed on Pa. R. C. P. 1525, which provides as follows:

"A party directed by an interlocutory order to pay costs may not take any further steps in the action until they are paid".

We thus have to determine the primary question whether a decree nisi in an equity action is within the purview of an interlocutory order as contemplated by this rule.

The costs here involved are $7,800 expenses, as developed in the testimony at the trial, and so found by the chancellor; witness fees and mileage in the amount of $1,389.30 in accordance with a bill of costs filed and not excepted to; a conservator's fee in the amount of $2,000, and a conservator's counsel fee in the amount of $1,200, said latter two amounts being stipulated as just and proper. The total costs, therefore, amount to $12,389.30.

It cannot be gainsaid that a decree nisi is an interlocutory order. It has been so declared by our Supreme Court, and properly so. See Lauer v. Lauer Brewing Co., 180 Pa. 593 (1897). This, however, does not answer the question whether a decree nisi is contemplated by Pa. R. C. P. 1525.

Defendants had an absolute right to file exceptions to the decree nisi in this court. This right they have exercised. In Murphy v. Murphy, 85 Pa. Superior Ct. 169, 171 (1925), a unanimous court stated, "The equity rules always contemplated two decrees: a preliminary decree or decree nisi, and a final decree". On page 172, language is used expressing "opportunity . . . given for exceptions". See also Maroni v. West

Penn Power Co., 91 Pa. Superior Ct. 259 (1927); Sessa v. Melnick, 420 Pa. 257 (1966), and Taylor v. Buterbaugh, 421 Pa. 10 (1966).

Interlocutory orders such as relate to discovery proceedings, themselves have the attributes of finality and as such would appear well to fall within the ambit of Rule 1525. They cannot be used as authority insofar as a decree nisi in equity is concerned, as discovery orders are in an entirely different category of the law. Blackstone, Book 3, Chap. XXIV, p. 396, states regarding judgment and its incidents: "Interlocutory judgments are such as are given in the middle of a cause . . . which is only intermediate and does not finally determine or complete the suit". See also, Book 3, Chap. XXVII, p. 452, proceedings in courts of equity, the decree itself: "The chancellor's decree is either interlocutory or final. It seldom happens, that the first decree can be final, or conclude the cause. . . ."

The Great Encyclopedic Dictionary, 1967, under Interlocutory, Law, gives as a definition, "Pronounced during the pendency of a suit, as a decision; provisional". *Nisi* is thus defined by the same authority: "*Law*, Unless: used after the word *order, rule, decree,* etc., signifying that *it shall become effective* at a certain time, unless modified or avoided". (Italics supplied.)

Rule 1526 states that "Costs shall follow the decree. . . .".

It appears to us that a decree nisi only becomes effective if no exceptions are filed within 20 days or if exceptions are filed and dismissed. In and of itself a decree nisi is impotent. Only a final decree, dismissing any exceptions that may have been filed, gives virility and life to a decree nisi. The determinative decree is a final decree, not a decree nisi, and, accordingly, we believe Rule 1526 is the proper rule to apply relative to costs in the instant suits and not Rule 1525.

The rule heretofore allowed is discharged.