## Toscano v. Horton

*Cohen and Cusick,* for plaintiffs.
*Robert E. Jamison,* for defendants.

SALMON, *S.J., Specially Presiding,* July 3, 1980—Presently before the court are defendants' preliminary objections to plaintiffs' amended complaint. These objections are in the nature of demurrers, motions to strike and motions for a more specific complaint.

Accepting the averments of the complaint as true, we are presented with the following factual situation.

On or about March 2, 1978 plaintiffs contacted defendant Jesse C. Horton, a licensed real estate broker, in order to use his services to purchase a certain parcel of property (hereafter referred to as the Snyder property). Horton orally agreed to act as plaintiffs' agent to purchase the property. He also indicated that he was familiar with the Snyder property and that its asking price was $100,000. Sometime between March 2 and March 8, 1978, plaintiffs orally authorized Horton to offer $100,000 on their behalf for the puchase of the property. On approximately March 4, 1978 Horton mailed an offer to J. Roy Snyder, one of the property's owners. This offer to purchase the property for $100,000 was set forth on an "Agreement to Buy and Sell Real Estate" regularly used by Horton's real estate office. The agreement listed Jesse C. Horton as purchaser.

On March 8, 1978 Horton met with plaintiffs and informed them that two other parties (an "individual from Florida" and a "fast-food chain") were interested in purchasing the property for $100,000 and that both were "in line" ahead of plaintiffs. Subsequently, plaintiffs authorized an offer of $105,000. A proposed agreement to buy and

sell real estate for that amount was prepared by Horton and signed by plaintiffs. This agreement listed plaintiffs as purchasers.

On March 13, 1978 plaintiffs delivered to Horton a check for $1,000 as a deposit on the proposed agreement which was deposited in Horton's account. Also on that date, Horton informed plaintiffs that the Snyder property was no longer available, having been purchased by the "individual from Florida." Relying on this statement, plaintiffs ceased their efforts to obtain the Snyder property and instead purchased a different parcel of land from one George W. Malizia. Horton acted as plaintiffs' agent in this transaction and, as a result, received a $3,900 commission.

Meanwhile, plaintiffs aver, a number of facts were hidden behind the facade of this seemingly innocent transaction. First, Horton failed to mention that he also represented Long John Silver's Inc., a corporation which was attempting to purchase the Snyder property at the same time as plaintiffs. Second, plaintiffs allege that Horton failed to convey their proposed offer to Snyder. Third, although Horton told plaintiffs that the property had been purchased by an individual from Florida, it was in reality purchased by Horton himself and his wife as tenants by the entireties.

## I. DEFENDANT JESSE C. HORTON'S PRELIMINARY OBJECTIONS

Defendant has demurred and requested a more specific pleading with respect to Counts I and II of the complaint, which seek to state a cause of action for breach of the real estate agency contract. He

argues that plaintiffs have made no averments as to consideration or to the terms and conditions of the alleged agency. We find no merit in this position. The complaint clearly states that the parties agreed that Horton would represent plaintiffs for the purpose of attempting to acquire the Snyder property. It also seems clear from Paragraph 22(d) of the complaint that Horton was to receive a commission upon the purchase of the property (as he later did on acquisition of the Malizia property). This right to a percentage of the purchase price paid by plaintiffs is valuable consideration which would support a contract.

Defendant demurs to plaintiffs' third cause of action, arguing that plaintiffs have failed to aver: (a) justifiable reliance; (b) that plaintiffs were unable to determine the state of the title of the Snyder property from public records; and (c) that the alleged misrepresentations caused plaintiffs pecuniary loss. Again we must disagree with defendant's position. A real estate broker owes a fiduciary duty to his principal: Grisafi v. Oberholtzer Associates, 95 Montg. 275 (1971). This duty is further amplified by the regulations governing the conduct of real estate brokers and in particular 49 Pa. Code §35.103, which prohibits brokers from knowingly making incorrect, inaccurate or improbable representations to give assurances or advice concerning any aspect of a real estate transaction. Given such a relationship between client and broker, any reliance placed on the broker's statements concerning the transaction are reasonably justifiable. This seems particularly true when the representation is that certain property was sold. To impose upon a buyer the burden of conducting a title search for

every piece of property which he is told is unavailable by a broker is totally unreasonable. While the records are available to the public, avoiding this necessity is one of the prime reasons people acquire the services of a broker. Furthermore, a search of such records would not necessarily disclose the misrepresentation (that "the Floridian" bought the property) unless and until someone other than "the Floridian" recorded a deed—a time which would be too late to help plaintiffs.

We also believe that plaintiffs have sufficiently alleged pecuniary loss to withstand a demurrer. "Pecuniary loss" should not be limited to money taken directly from a party. Rather, it must also include destruction of a reasonable expectation of pecuniary advantage: Gaydos v. Domabyl, 301 Pa. 523, 152 Atl. 549 (1930) ("pecuniary loss" in wrongful death case).

Defendant also demurs to plaintiffs' fourth cause of action (intentional interference with prospective contractual relationships) since plaintiffs have not alleged that a contract between themselves and Snyder either existed or was certain to exist.

Interference with prospective contractual relationships has been recognized as a tort in Pennsylvania: Glenn v. Point Park College, 441 Pa. 474, 272 A. 2d 895 (1971). While Glenn addressed a factual situation wherein the interference induced a third party not to enter into the contract, there is no reason why improper inducements such as alleged here should not be just as actionable. This position is the same as that expressed by Restatement, 2d, Torts, § 766B, which extends the tort of interference to persons who prevent another from acquiring or

continuing prospective relations. Since this type of action is by its very nature speculative to some degree, we cannot bar it for that reason at this time. See Restatement, 2d, Torts, §912, comments d and f.

Similarly, we find no basis for defendant's demurrer to plaintiffs' fifth cause of action (usurpation of a business opportunity by a fiduciary). The facts pleaded clearly allege an agency relationship. Furthermore, a broker engaged to negotiate the purchase of property has a duty to forward the offer of his principal: Scott v. Purcell, _____Pa. Superior Ct. _____, 399 A. 2d 1088 (1979). If, as plaintiffs allege, defendant did not do so, but rather did nothing but wait until he could "snap up the property for himself," their cause of action is clearly established: Scott v. Purcell, supra; Shannon v. Baltz, 398 Pa. 431, 158 A. 2d 558 (1960).

Plaintiffs' sixth cause of action seeks the imposition of a constructive trust based on the theory of unjust enrichment. As we have said, plaintiffs have alleged facts sufficient to sustain the five previous causes of action. Assuming these allegations can be proven, it is obvious that defendant's enrichment by acquiring the property would have been obtained "unjustly" and a constructive trust would be a proper remedy. Therefore, defendant's demurrer to this count will be dismissed.

We also dismiss defendant's preliminary objection raising the defense of laches. This defense bars relief when the complaining party is guilty of want of due diligence in failing to institute his action to another's prejudice: Wilson v. King of Prussia Enterprises, Inc., 422 Pa. 128, 221 A. 2d 123 (1966). Defendant here argues that : (1) the dealings be-

tween the parties took place in March 1978; (2) a deed from Snyder to the Hortons was filed in the recorder of deeds office on June 30, 1978; (3) the complaint was not filed until August 15, 1979, and (4) defendants have meanwhile invested in landscaping and improving the property so as to be prejudiced by the delay. We disagree.

A party asserting laches must demonstrate prejudice resulting from the lapse of time: Kay v. Kay, 460 Pa. 680, 334 A. 2d 585 (1975). Laches may not be based on a change of position taking place before the complainant could have and reasonably should have brought suit: Leedom v. Thomas, 473 Pa. 193, 373 A. 2d 1329 (1977). In the case at bar, plaintiffs have alleged that Horton continued to reassure them throughout the summer of 1978 that "he regretted not having purchased the Snyder property himself." It was not until November 1978 that plaintiffs read a newspaper article concerning Horton's having moved houses to the property. Despite defendant's protestations, it seems reasonable to assume that, in view of the statements of their fiduciary (Horton), plaintiffs had no reason to believe they had any reason to bring a suit before that time. For all they knew, the property sale had been legitimately made to a competing interest from Florida. The nature of the news article is of course also significant since it described a majority of the "prejudice" defendant complains of. Clearly then, this change of position took place *before* plaintiffs reasonably should have brought suit and should not be considered under Leedom, supra. In addition, we would note that the period of delay, from sometime in November 1978 until plaintiffs initiated this suit by filing a praecipe on February 20, 1979,

is approximately three months. In view of the complexity of the circumstances and the amount of investigation required in establishing a basis for the action, we cannot characterize this as "unreasonable." Defendant's preliminary objection raising the defense of laches must therefore be dismissed.

Defendant also objects to plaintiffs' demand for a jury trial. Under Pa.R.C.P. 1513, the court may submit to trial by jury any or all issues of fact. This action may be taken "on [the court's] own motion or upon the petition of any party." Equity cases thus differ from cases governed by the assumpsit rules, where a demand may be made " by endorsement on a pleading or by a separate writing," Pa.R.C.P. 1007.1, and from divorce rules which allow the request to be raised "by the pleadings or by petition and answer." Pa.R.C.P. 1132. Plaintiffs' demand is therefore procedurally incorrect. Moreover, we cannot at this time treat that demand as being made on petition since it is not presently clear that questions of fact will exist. Defendant may, for example, choose to admit all of plaintiffs' averments and defend on legal issues only. Therefore, we agree with defendant on this issue and strike plaintiffs' demand for jury trial.

## II. FRANCES H. HORTON'S PRELIMINARY OBJECTIONS

In addition to the objections raised above, Frances H. Horton, wife of Jesse C. Horton and co-defendant, demurs on the basis that there are no allegations that she, in any way, contributed to plaintiffs' damages and the complaint therefore

does not state a cause of action against her. While this is true for some of the damages, we cannot dismiss all of the claims against her. The Hortons acquired the property as tenants by the entireties. Mrs. Horton's interest in the property therefore cannot be separated from that of her husband. By dismissing the claims against her, we would be absolving her from the recovery by plaintiffs of the property and proceeds which plaintiffs have alleged were fraudulently obtained. Even though Mrs. Horton merely accepted the fruits of this allegedly fraudulent behavior, she is a party to the unjust enrichment: DeGasperi v. Valicenti, 198 Pa. Superior Ct. 455, 181 A. 2d 862 (1962). Thus, the restitutionary damages are properly stated with respect to Mrs. Horton and may not be dismissed.

## ORDER

And now, July 3, 1980, oral argument on preliminary objections of each defendant having been heard, briefs having been submitted and having been carefully considered, paragraph 13 of the preliminary objections of defendant Jesse C. Horton is sustained and plaintiffs' demand for a jury trial is stricken, and in all other respects the preliminary objections of Jesse C. Horton are dismissed; and paragraph 12 of the preliminary objections of Frances H. Horton is sustained and plaintiffs' demand for a jury trial is stricken, and in all other respects the preliminary objections of Frances H. Horton are dismissed.